The STATE of Texas,

v.

Alfred DeLeon MUNOZ, Appellee.

No. 0065–98

Court of Criminal Appeals of Texas, En Banc.

Feb. 17, 1999.

---

Michael M. Guerra, McAllen, for appellant.

Theodore C. Hake, Asst. Dist. Atty., Edinburg, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

McCORMICK, P.J., delivered the opinion of the Court, in which MANSFIELD, KELLER, HOLLAND, WOMACK and KEASLER, JJ., joined.

This case requires the Court to decide issues of federal constitutional law. Therefore, we are obligated to follow controlling United States Supreme Court federal constitutional precedents.

Appellee was indicted on one count of deadly conduct and three counts of at-

tempted murder. The trial court granted appellee's motion to dismiss the indictment based on federal constitutional speedy trial grounds and the State appealed. Relying on its prior decision in *Melendez v. State*, the Court of Appeals affirmed the trial court's decision. *State v. Munoz*, 960 S.W.2d 191, 200 (Tex.App.—Corpus Christi 1997); *Melendez v. State*, 929 S.W.2d 595 (Tex.App.—Corpus Christi 1996, no pet.). We granted discretionary review petitions filed by the Hidalgo County District Attorney and the State Prosecuting Attorney to review the decision of the Court of Appeals.

## SUBSTANTIVE LAW AND APPELLATE STANDARD OF REVIEW

■ The essential ingredient of the Sixth Amendment's speedy trial guarantee is "orderly expedition and not mere speed." *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 459–60, 30 L.Ed.2d 468 (1971) (Sixth Amendment speedy trial guarantee "would appear to guarantee a criminal defendant that the Government will move with the dispatch that is appropriate to assure him an early and proper disposition of the charges against him"). Since 1972 United States Supreme Court precedent has required courts to analyze federal constitutional speedy trial claims "on an ad hoc basis" by weighing and then balancing four factors: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, 116–17 (1972). This balancing test requires weighing case-by-case "the conduct of both the prosecution and the defendant." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116. No single *Barker* factor is a "necessary or sufficient condition to the finding" of a speedy trial violation. *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. The "related" *Barker* factors "must be considered together with such other circumstances as may be relevant." *Id.*

■ In reviewing the trial court's decision on appellee's federal constitutional speedy trial claim, the Court of Appeals applied a "bifurcated standard of review" meaning "an abuse of discretion standard for the factual components" and a "*de novo* " standard for the legal components of the trial court's decision. *Munoz*, 960 S.W.2d at 196. Based on this Court's recent decisions in *Guzman v. State* and *Johnson v. State*, we agree this is the appropriate standard of review. See *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Cr. App.1997) (reviewing courts should "afford almost total deference to a trial court's determination of the historical facts that the record supports"); *Johnson v. State*, 954 S.W.2d 770, 771 (Tex.Cr.App.1997) (in reviewing trial courts' decisions on federal constitutional speedy trial claims, appellate courts may conduct *de novo* review by independently weighing and balancing the four *Barker* factors). This disposes of the District Attorney's first ground for review which requests this Court to clarify the standard of review in cases like this.

■ Most of the facts relevant to appellee's speedy trial claim are undisputed. The issue here mostly involves the legal significance of these facts to this claim. Because appellee won in the trial court on his speedy trial claim, we must presume the trial court resolved any disputed fact issues in appellee's favor, and we are required to defer to these implied findings of fact that the record supports. See *Guzman*, 955 S.W.2d at 89.

## LENGTH OF DELAY

■ The length of delay is a "triggering mechanism" for analysis of the other *Barker* factors. *Barker*, 407 U.S. at 530–32, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 117. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other [*Barker*] factors that go into the balance." *Id.* "Presumptive prejudice" does not "necessarily indicate a statistical probability of prejudice; it simply marks the point at

which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652 fn.1, 112 S.Ct. 2686, 2691, fn. 1, 120 L.Ed.2d 520, 528 fn. 1 (1992).

■ This *Barker* factor "is actually a double enquiry." *Doggett*, 505 U.S. at 651, 112 S.Ct. at 2690, 120 L.Ed.2d at 528.

"Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, (citation omitted), since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.*

■ In this case, the State concedes and the Court of Appeals decided "a seventeen-month delay between the date of [appellee's] arrest, February 11, 1995, and the date of his speedy trial hearing, July 25, 1996, is sufficient to trigger review of the remaining [*Barker* ] factors." *Munoz*, 960 S.W.2d at 197. We also will consider this delay sufficient to trigger consideration of the other *Barker* factors.

## REASON FOR THE DELAY

■ Under *Barker* "different weights should be assigned to different reasons" for the delay. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. A "deliberate attempt to delay the trial" should be weighed heavily against the government. *Id.*[1] A "more neutral reason such as negligence or overcrowded courts should be weighed [against the government] less heavily." *Id.* A valid reason for the delay should not be weighed against the government at all. Id. (valid reason for the delay "should serve to justify appropriate delay"). And delay which is attributable in whole or in part to the defendant may even constitute a waiver of a speedy trial claim. *Barker*, 407 U.S. at 528–30, 92 S.Ct.at 2191–92, 33 L.Ed.2d at 116 (delay attributable to defendant constitutes waiver of speedy trial); see also *Dickey v. Florida*, 398 U.S. 30, 48, 90 S.Ct. 1564, 1574, 26 L.Ed.2d 26, 38 (1970) (Brennan, J., concurring) (defendant may be "disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility").

During the hearing on appellee's motion to dismiss the indictment based on speedy trial grounds, the prosecution attributed the entire seventeen-month delay to an overcrowded court docket and ongoing plea negotiations. The record reflects the prosecution made four plea offers to appellee during this period of time. Each succeeding plea offer was more beneficial to appellee than the previous plea offer.

"Q. Okay. And then would you agree that if that was in November, then in January, or at a later time, the negotiations came to the point where it was eight years in prison with no affirmative finding. Do you recall that made to you?

"A. [APPELLEE'S LAWYER] I recall the longer my client was in jail the lower and lower the recommendations were being made, to the final point of after he had been in jail to 17, almost 18 months now, that the recommendation was three years TDC with an affirmative finding, half time, which—which—although—al-

---

1. "Deliberate attempt to delay the trial" has been stated a number of ways. *Doggett*, 505 U.S. at 657, 112 S.Ct. at 2693, 120 L.Ed.2d at 531 ("deliberate intent [to delay trial] to harm the accused's defense"); *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117 ("deliberate attempt to delay the trial in order to hamper the defense"); *Marion*, 404 U.S. at 325–27, 92 S.Ct. at 466, 30 L.Ed.2d at 481–82 (intentional delay "to gain some tactical advantage over [defendants] or to harass them").

though—which is often considered by many people time served.[2]"

The parties agreed on a plea after the prosecution's fourth plea offer. The case was set for a hearing on appellee's plea for June 18, 1996. However, at the June 18th hearing appellee reneged on the deal and asked the prosecution for a more beneficial plea. The prosecution refused and informed the trial court there would be no guilty plea. The trial court set a trial date for August 19, 1996.

"Q. Okay. And what was your—what was your offer in June of this year?

"A. In June of this year, that was the three years with the lesser offense on the affirmative finding and things of that nature.

"Q. Is it true, Mr. Thompson, in June of this year this case was set for a plea of guilty?

"A. That's true. This case, I believe, was set twice in the month of June. I show that it was set June 18[th] for a plea of guilty. And I believe there was one prior setting—or earlier setting in June of this year where the case—where the case was set.

"Q. Okay. What is your understanding of why the case was set for a plea of guilty?

"A. My understanding was that the defendant was going to plea (sic) guilty at that time.

"Q. Who did you get that understanding from?

"A. From the defendant's attorney.

"Q. Is that Mr. Guerra?

"A. That is Mr. Guerra.

"Q. Can you tell the Court, Mr. Thompson, what happened when it was set for a plea of guilty in June of this year?

"A. My recollection is when it was set for a plea of guilty on June 18[th] of this year, that we went in to court. I had put together the evidence package, State's Exhibit No. 2, tendered—given the defense counsel the stipulation and the waivers and all those things, and then—then while we were there in court, the defendant decided to reject—that he didn't want three years, and Mr. Guerra came back to me and said, Give him two years. At that particular time, the judge then came out on the bench. It was announced that there wasn't going to be a plea of guilty, that the defendant wanted a trial. And this case was then set for trial on the 19[th] of August."

The prosecution, appellee and appellee's attorney all testified the entire seventeen-month delay was attributable to ongoing good faith plea negotiations.[3] The prose-

2.   However, appellee complains on appeal as he did during the hearing on his motion to dismiss that this was unfair. Appellee claims the prosecution's fourth plea offer was an attempt to coerce appellee to plea to "time served" which "unconstitutionally forced" appellee "to make a decision to accept or not accept the plea offer." See *Melendez*, 929 S.W.2d at 599 (parties' plea negotiations indicated "an intentional delay by the State to coerce [defendant] to accept its offer of ten years"). Appellee claims "the parties' plea negotiations" constituted "a deliberate attempt by the prosecution to delay the trial in order to gain a tactical advantage for the State." Appellee claims there "is no justice in this situation."

A defendant can avoid this situation simply by demanding his right to a speedy trial. See *Barker*, 407 U.S. at 528–30, 92 S.Ct. at 2191–92, 33 L.Ed.2d at 116 (defendant has respon-

sibility to assert right to a speedy trial). Moreover, there is no evidence to support a finding that the plea negotiations constituted a deliberate attempt by the prosecution to delay the trial. The evidence shows the prosecution did not attempt to delay the trial but instead attempted to dispose of the case with a plea. The prosecution's fourth plea offer for "time served" does not contradict this.

In addition, appellee does not claim the prosecution's first three plea offers which account for most of the delay in this case (approximately sixteen months) were an attempt to coerce appellee to accept a plea. We also note appellee accepted the prosecution's fourth plea offer but later reneged on the deal not because he wanted a trial but because he wanted a lower offer from three years to two years.

3.   The Court of Appeals apparently ignored the undisputed evidence in the record that the

cution testified:

"Q. At this time could you expand on what the State's excuse or reason for this defendant not being brought to trial is?

"A. Yes. This defendant—the State has been engaged in plea negotiations with this defendant's attorney throughout the course of—of pendency of this particular case. We have gone through numerous plea offers, plea suggestions, continuous discussions with his Counsel as to how the case could be disposed of short of a trial, and in good faith, we have tried to negotiate the case in that manner. And so the case has not been brought to trial because the State at all times thought the case would not have to be brought to trial because the—the representations of defendant's attorney was that—that plea negotiations were—were in good faith."

Appellee testified:

"Q. Okay. And [appellee's lawyer] has informed you that yes, I am trying to—to work out your case, negotiate—negotiate or work out a plea; is that correct?

"A. Well, I guess so.

"Q. Okay. And this has happened during the whole—the whole time these charges have been pending; is that correct?

"A. Yes, sir."

Appellee's lawyer testified:

"Q. Okay. All right. And throughout this time, you have been negotiating in good faith with the District Attorney's office on a plea in this particular case; is that correct?

"A. Yes."

Appellee's lawyer also testified the case was going to be set "for trial" if "it wasn't going to get worked out."

"Q. Okay.

"A. I mean, if it wasn't going to get worked out, we were going to set it for trial. And even if it was going to get worked out, it was going to be set for trial. I—it's my understanding this case has been set for trial every month since he was arraigned, since he got his first trial setting on May 22 nd. That was my understanding."

The Court of Appeals decided the State's "excuse of plea negotiations" was an "unacceptable" excuse for the delay. See *Munoz*, 960 S.W.2d at 197, 200.[4] The State claims "delay caused by good faith plea negotiations" is a valid reason for the delay and should not be weighed against the State.[5]

■ We agree. Delay caused by good faith plea negotiations is not the result of negligence or a "deliberate attempt to delay the trial." See *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. We decide delay caused by good faith plea negotiations is a valid reason for the delay and should not be weighed against the prosecution. See *Barker*, 407 U.S. at 530–32, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 117 (valid reason for delay not weighed against government); *United States v. Anderson*, 902 F.2d 1105, 1110 (2 nd Cir.), cert. denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 146 (1990) (no speedy trial violation where, among other things, "defense

*entire* delay was attributable to the ongoing plea negotiations. See *Munoz*, 960 S.W.2d at 197 (plea negotiations "do not sufficiently explain the delay" partly because "the State made only four offers over the course of seventeen months").

4. This Court of Appeals made a similar holding in *Melendez*. See *Melendez*, 929 S.W.2d at 598–99 (ongoing " 'plea negotiations' insufficient to establish an excuse for the State's delay"). In this case, the Court of Appeals apparently decided the prosecution's fourth

plea offer was too low. See *Munoz*, 960 S.W.2d at 199. In *Melendez*, the Court of Appeals apparently decided the prosecution's plea offer was too high. See *Melendez*, 929 S.W.2d at 599–600. This case and *Melendez* demonstrate why the terms of plea offers generally are irrelevant to a speedy trial analysis.

5. This claim is presented in ground for review one of the State Prosecuting Attorney's petition for discretionary review and ground for review three of the District Attorney's petition for discretionary review.

counsel agreed to delays and continuances for purposes of plea negotiations"); *Millard v. Lynaugh,* 810 F.2d 1403, 1406 (5 th Cir.), cert. denied, 484 U.S. 838, 108 S.Ct. 122, 98 L.Ed.2d 81 (1987) (delay caused by "extended plea negotiations" attributable in large part to defendant). The Court of Appeals erred to decide otherwise. *Munoz,* 960 S.W.2d at 197.

We also note appellee was in large part responsible for the delay which is probably dispositive of appellee's speedy trial claim. See *Barker,* 407 U.S. at 528–30, 92 S.Ct. at 2191–92, 33 L.Ed.2d at 116 (delay attributable to defendant constitutes waiver of speedy trial); *Dickey,* 398 U.S. at 48, 90 S.Ct. at 1574, 26 L.Ed.2d at 38 (Brennan, J., concurring) (defendant may be "disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility");[6] *Millard,* 810 F.2d at 1406 (delay caused by "extended plea negotiations" attributable in large part to defendant). However, we will examine the other *Barker* factors since this is what *Barker* seems to require. See *Barker,* 407 U.S. at 530–32,, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 117 (consideration of the *Barker* factors required where length of delay is "presumptively prejudicial").

## ASSERTION OF FEDERAL CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

■ *Barker* rejected the "demand-waiver" rule which had held a defendant "forever" waives his right to a speedy trial when he does not demand one. *Barker,* 407 U.S. at 527–30, 92 S.Ct. at 2190–92, 33 L.Ed.2d at 115–16. Under *Barker* a defendant still is responsible for asserting or demanding his right to a speedy trial. *Barker,* 407 U.S. at 528–29, 92 S.Ct. at 2191, 33 L.Ed.2d at 115–16 (rejection of "demand-waiver" rule does not mean defendant has no responsibility to assert his right to a speedy trial). However, his

failure to do so is not necessarily dispositive of his speedy trial claim with this being weighed and balanced with the other *Barker* factors. *Barker,* 407 U.S. at 528–32, 92 S.Ct. at 2191–93, 33 L.Ed.2d at 116–17. *Barker* nevertheless emphasized that a defendant's failure to assert his right to a speedy trial "will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

The record reflects that on April 17, 1995, appellee signed a waiver of arraignment form which, among other things, contained a *pro forma* request for a trial date. The trial court set a trial date for May 22, 1995. However, as plea negotiations continued the case was passed monthly on the court's docket with no objection from appellee.

■ On August 17, 1995, appellee filed a motion to sever in which he requested that several of the counts in the indictment be severed into three separate jury trials. Appellee failed to obtain a ruling on his motion to sever and the record is silent on whether the trial court was ever aware of the motion.

When appellee declined to plead guilty at the June 18 th plea hearing after having agreed to do so, the trial court set a trial date for August 19, 1996. On July 16, 1996, appellee filed a motion to dismiss the indictment in which he expressly complained for the first time about a violation of his right to a speedy trial.

After noting that "nothing [appellee] moved for or filed prior to his motion to dismiss the indictment of (sic) July 1996 expressly reflects an assertion of his right to a speedy trial," the Court of Appeals nevertheless decided the "waiver of arraignment form" and appellee's "motion to sever" requesting "three separate jury tri-

---

6. In *Barker* the Court stated there was "little difference" between Justice Brennan's analytical approach in *Dickey* and the analytical approach adopted in *Barker.* See *Barker,* 407 U.S. at 530 fn. 30, 92 S.Ct. at 2192 fn. 30, 33 L.Ed.2d at 117 fn. 30. So it appears that even Justice Brennan would have held a defendant may be "disentitled to the speedy-trial safeguard in the case of delay" caused by "extended plea negotiations."

als" were an assertion of appellee's right to a speedy trial. *Munoz*, 960 S.W.2d at 195, 198, 200. The State claims the waiver of arraignment form containing a *pro forma* request for a trial date and appellee's motion to sever are not an assertion of appellee's right to a speedy trial.[7]

We agree. As the Court of Appeals noted, "nothing [appellee] moved for or filed prior to his [July 1996] motion to dismiss the indictment expressly reflects an assertion of his right to a speedy trial." See *Barker*, 407 U.S. at 517–19, 533–35, 92 S.Ct.at 2185–87, 2193–94, 33 L.Ed.2d at 110, 119 (no assertion of right to speedy trial when defendant filed motion to dismiss indictment in response to "another motion for continuance" by the government after over three year delay). This is mostly dispositive of the "assertion of the right" *Barker* factor. See *Barker*, 407 U.S. at 517–19, 533–35, 92 S.Ct. at 2185–87, 2193–94, 33 L.Ed.2d at 110, 119 (defendant did not assert right to speedy trial until in another motion to dismiss the indictment he expressly complained that "his right to a speedy trial had been violated").

Appellee's motion to sever and his *pro forma* request for a trial date in the waiver of arraignment form cannot be considered an assertion of his right to a speedy trial under the circumstances of this case. See *Barker*, 407 U.S. at 528–30, 92 S.Ct. at 2191–92, 33 L.Ed.2d at 116 (rejection of "demand-waiver" rule allows "a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection"). And, even if they could, it is difficult to conceptualize how a defendant can simultaneously assert his right to a speedy trial and also engage in plea negotiations with no objection to the delay caused thereby. See *Barker*, 407 U.S. at 533–37, 92 S.Ct. at 2193–95, 33 L.Ed.2d at 119–20 (record suggested defendant acquiesced in delay and did not want to be tried); *Millard*, 810

F.2d at 1406 (defendant's "motions for speedy trial were not consistent with his other actions" of engaging in "ongoing plea negotiations" indicating the defendant's actions were really "directed toward the cultivation of a favorable plea bargain and not toward an early trial date"). The Court of Appeals erred to decide appellee asserted his right to a speedy trial before his July 1996 motion to dismiss the indictment. See *Munoz*, 960 S.W.2d at 198, 200.

## PREJUDICE

■ The last *Barker* factor is "prejudice to the defendant." *Barker*, 407 U.S. at 532–33, 92 S.Ct. at 2193–94, 33 L.Ed.2d at 118. This prejudice is assessed "in the light of the interests" which "the speedy trial right [is] designed to protect." *Id.* These interests are: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Id.* Of these subfactors of the last *Barker* factor, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

This Court's case law holds a defendant has the burden to make some showing of "prejudice" although a showing of " 'actual prejudice' " is not required. *Harris v. State*, 489 S.W.2d 303, 308 (Tex.Cr.App. 1973); see also *Chapman v. Evans,* 744 S.W.2d 133, 137 (Tex.Cr.App.1988). This Court's case law also holds that when a defendant makes a "prima facie showing of prejudice," the State carries " 'the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay.' " *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex.Cr.App.1973).

The record reflects appellee was incarcerated in the county jail during the entire seventeen-month delay. During the hear-

---

**7.** These claims are presented in ground for review two of the State Prosecuting Attorney's petition for discretionary review and ground for review two of the District Attorney's petition for discretionary review.

ing on his motion to dismiss the indictment, appellee testified "he was scared and anxious, forgot many things that happened at the time of the incident that led to his arrest, lost his job, his family life was disrupted, he was forced into idleness, and he was uncertain as to the whereabouts of particular witnesses." *Munoz,* 960 S.W.2d at 198. We set out the entirety of appellee's direct testimony.

"Q. Have you been in jail since you have been arrested?

"A. Yes, sir.

"Q. While in jail have you been scared?

"A. Uh-huh, yes.

"[THE COURT] You need to answer with words and loud enough so we can all hear.

"A. Yes, sir.

"Q. Have you been anxious?

"A. Yes, sir.

"Q. Have you wondered what is going to happen to you?

"A. Yes, sir.

"Q. Have you forgotten many of the details about what happened leading to your arrest?

"A. What?

"Q. Have you forgotten many things that have happened at the time of the incident that—that led to your arrest?

"A. Yes.

"Q. Okay. Your bond has been reduced two times but you can—your family cannot afford to get you out?

"A. Yes, sir.

"Q. Okay. Have you done anything to delay the trial of your case?

"A. No, sir.

"Q. Are you concerned you may not be able to locate some witnesses that would come to your defense because of this delay?

"A. If—I'm not going to—

"Q. Are—do you believe there are some witnesses you will not be able to find because of the delay that—

months and counting, that you have been in jail?

"A. Yes, sir.

"Q. Do you think some of the witnesses that you can find, including some of the neighbors, have forgotten a lot of the things that have happened?

"A. Yes, sir."

On cross-examination, appellee testified he did not know if any witnesses were missing.

"Q. Okay. Is there anybody else, some particular person, that you—that you know has disappeared or that is no longer available to testify in this case?

"A. Well, I don't know where Sustaita is at or—or—or Zuniga. I don't know. I don't know.

"Q. Okay. But you are aware that your—your attorney hired an investigator to—to look into your case, correct?

"A. Yes, sir.

"Q. Okay. So you can't tell me that those people are not around; is that correct?

"A. I don't know if they are around or not.

"Q. Okay. You said you—you—you—that there were witnesses that were not around that have disappeared or are lost. Which witnesses are you referring to?

"[APPELLEE'S LAWYER] Your Honor, I'm going to object. That question has been asked and answered, asked and answered several times.

"[THE COURT] The objection is overruled. You may answer that question.

"A. Excuse me. What was the question again?

"Q. Can you—can you tell me a witness that is no longer available?

"A. Well, I just know—I don't know if they are around.

"Q. You just don't know?

"A. Yes."

■ The Court of Appeals decided "[a]nalysis of prejudice to the defendant is the most important of the *Barker* factors." *Munoz*, 960 S.W.2d at 199. This is an incorrect statement of the law. Though the "most serious" subfactor of the three subfactors of the *Barker* "prejudice to the defendant" factor is the "impairment of the defense" subfactor, *Barker* makes clear that no single factor of its four factors is necessarily "more important" than any of the other factors:

> "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process...." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

The Court of Appeals decided appellee made "some showing of prejudice" for three reasons. *Munoz*, 960 S.W.2d at 199–200. Viewing the "State's last plea offer as dispositive of this consideration," the Court of Appeals decided "the severity of [appellee's] pretrial incarceration is aggravated by the fact that the State ultimately did not view his alleged crimes as deserving of lengthy punishment." *Munoz*, 960 S.W.2d at 199. The Court of Appeals also decided appellee "demonstrated he was scared and anxious beyond what would be expected from ordinary and inevitable pretrial incarceration." *Id.* The Court of Appeals also decided appellee's "memory loss in relation to details about the incident which led to his arrest" constituted some showing of an impairment to appellee's defense which the prosecution "failed to meet its burden of contradicting." *Munoz*, 960 S.W.2d at 199–200.[8]

■ As to the "oppressive pretrial incarceration" subfactor, the "dispositive consideration" is the impairment of a defendant's liberty with its effects upon the defendant. See *Barker*, 407 U.S. at 532–33, 92 S.Ct. at 2193–94, 33 L.Ed.2d at 118; see also *United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 654, 88 L.Ed.2d 640 (1986) (speedy trial guarantee designed to minimize possibility of lengthy incarceration before trial, to reduce the lesser impairment of liberty imposed on accused while released on bail and to shorten disruption of life caused by arrest and presence of unresolved criminal charges); *Doggett*, 505 U.S. at 661, 112 S.Ct. at 2695, 120 L.Ed.2d at 534 (Thomas, J., dissenting) (core concern of Speedy Trial Clause is impairment of liberty and "delay-related prejudice to a defendant's liberty"). That the prosecution ultimately may not have viewed appellee's "alleged crimes as deserving of lengthy punishment" for plea bargaining purposes is irrelevant to the "oppressive pretrial incarceration" subfactor. The Court of Appeals erred to "view the State's last plea offer as dispositive of this consideration." *Munoz*, 960 S.W.2d at 199.[9]

■ What is dispositive of "this consideration" is that appellee was incarcerated during the entire seventeen-month delay. As to the "anxiety and concern of the accused" subfactor, since appellee prevailed on his speedy trial claim in the trial

---

8. The Court of Appeals also decided appellee failed to make some showing of an impairment to his defense as a result of witness unavailability. *Munoz*, 960 S.W.2d at 200; see also *Swisher v. State*, 544 S.W.2d 379, 382 (Tex.Cr.App.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977). And, we agree.

9. In *Melendez*, the Court of Appeals apparently viewed a jury's trial verdict sentencing the defendant to two years probation as having some bearing on this subfactor. See *Melendez*, 929 S.W.2d at 600 ("prejudicial nature of [defendant's] pretrial incarceration weighs heavily against the State in light of the protracted length of the incarceration and [defendant's] sentence of two years probation"). A jury's sentence is irrelevant to a speedy trial analysis.

court, we defer to the trial court's implied findings that appellee "was scared and anxious beyond what would be expected from ordinary and inevitable pretrial incarceration." *Munoz*, 960 S.W.2d at 199; see *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118 (this subfactor concerned with other disadvantages of restraints on liberty such as "living under a cloud of anxiety, suspicion, and often hostility").

■ As to the "impairment of the defense" subfactor, the State argues the Court of Appeals' decision that the prosecution failed to "meet its burden of contradicting" appellee's "assertion of dimming memories" places "an impossible burden on the State."[10] We understand the State to argue appellee's bare "assertion of dimming memories" does not constitute "some showing" of an "impairment to the defense."

We agree. Since appellee prevailed on his speedy trial claim in the trial court, we must defer to the trial court's implied finding that the delay caused appellee "a memory loss in relation to details about the incident which led to his arrest." *Munoz*, 960 S.W.2d at 200. However, *Barker* as well as this Court's case law[11] require more of a showing than this.

*Barker* requires a defendant to show that "lapses of memory" are in some way "significant to the outcome" of the case. See *Barker*, 407 U.S. at 534, 92 S.Ct. at 2194, 33 L.Ed.2d at 119 (prejudice was "minimal" because, among other things, the record indicated "only two very minor lapses of memory" which "were in no way significant to the outcome"); see also *Doggett*, 505 U.S. at 655–57, 112 S.Ct. at 2692–93, 120 L.Ed.2d at 531–32 (in the absence of "excessive" bad-faith or "excessive" negligent delay by the government, a defendant usually has to show "specific prejudice" to his defense). Loss of memory claims like those asserted by appellee in this case do not meet this standard. See *Loud Hawk*, 474 U.S. at 315, 106 S.Ct. at 656, 88 L.Ed.2d at 654 ("possibility" of prejudice from "absence or loss of memory of witnesses" insufficient to support defendants' speedy trial claims). The Court of Appeals erred to decide appellee made "some showing" of an "impairment to his defense" based on appellee's bare assertion of "dimming memories."

In this case, appellee's showing of prejudice was "minimal." See *Barker*, 407 U.S. at 534, 92 S.Ct. at 2194, 33 L.Ed.2d at 119 (prejudice was "minimal" where defendant lived "for over four years under a cloud of suspicion and anxiety" and spent "ten months in jail before trial," and the record indicated "only two very minor lapses of memory" which "were in no way significant to the outcome"). The Court of Appeals erred to decide otherwise. *Munoz*, 960 S.W.2d at 199–200.

## BALANCING THE BARKER FACTORS

■ Comparing the facts of this case to *Barker's* facts, it is easy to conclude the government did not violate appellee's right to a speedy trial. See *Barker*, 407 U.S. at 533–37, 92 S.Ct. at 2193–95, 33 L.Ed.2d at 119–20 (no speedy trial violation where delay exceeded five years with more than four years of the delay unexcused, defendant did not assert right to speedy trial, and prejudice was "minimal"). In this case there was no "excessive" delay, there was a valid reason for the delay for which appellee was in part responsible, there was

---

10. This claim is presented in ground for review four of the District Attorney's petition for discretionary review.

11. To the extent this Court's case law might be inconsistent with *Barker* and other United States Supreme Court precedents such as *Doggett* and *Loud Hawk*, our case law would have to be overruled. See *State v. Guzman*, 959 S.W.2d 631, 633 (Tex.Cr.App.1998) (when Texas case law interpreting the federal constitution is in conflict with United States Supreme Court case law interpreting the federal constitution, Texas courts are obligated to follow United States Supreme Court federal constitutional precedents).

no assertion by appellee of his right to a speedy trial, and any prejudice to appellee was "minimal." We decide the government did not violate appellee's right to a speedy trial. See *Doggett*, 505 U.S. at 655–57, 112 S.Ct. at 2692–93, 120 L.Ed.2d at 531–32; *Barker*, 407 U.S. at 533–37, 92 S.Ct. at 2193–95, 33 L.Ed.2d at 119–20; *Dickey*, 398 U.S. at 47–49, 90 S.Ct. at 1574–75, 26 L.Ed.2d at 38 (Brennan, J., concurring). And, we expressly disapprove *Melendez* to the extent it is inconsistent with this opinion.

Having decided all issues fairly presented in the petitions for discretionary review and necessary to an intelligent resolution of appellee's speedy trial claim,[12] we reverse the judgment of the Court of Appeals and remand the case to the trial court with instructions to reinstate the indictment.

MEYERS, PRICE and JOHNSON, JJ., concur in the result.

---

12. See *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 1715 fn. 6, 64 L.Ed.2d 333 (1980); *Vance v. Terrazas*, 444 U.S. 252, 100 S.Ct. 540, 544 fn. 5, 62 L.Ed.2d 461 (1980); *Barker*, 407 U.S. at 532–33, 92 S.Ct. at 2193, 33 L.Ed.2d at 118 (*Barker* factors are "related" and "must be considered together with such other circumstances as may be relevant").