No. 04-01-00596-CR



Randall HUDSON,


Appellant



v.



The STATE of Texas,


Appellee



From the 81st Judicial District Court, Wilson County, Texas


Trial Court No. 00-05-075-CRW


Honorable Stella Saxon, Judge Presiding



Opinion by: Alma L. López, Justice


Sitting: Phil Hardberger, Chief Justice

 Alma L. López, Justice

 Karen Angelini, Justice


Delivered and Filed: June 12, 2002


AFFIRMED

 Appellant, Randall Hudson, appeals his conviction for driving while intoxicated--subsequent
offense. In his sole point of error, appellant argues that the trial court erred in denying his motion
to dismiss for violation of his due process and constitutional right to a speedy trial. (1) We overrule
appellant's issue and affirm the trial court's judgment.

STANDARD OF REVIEW

 A bifurcated standard of review is applied in reviewing a trial court's decision on a speedy trial
claim. See State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). We review the trial court's
determination of the historical facts under an abuse of discretion standard, while we review the trial
court's application of the law to the facts de novo. See id.

 In determining whether a defendant's right to a speedy trial has been violated, we must balance
four factors: (1) length of the delay; (2) reasons for the delay; (3) assertion of the right; and (4)
prejudice to the defendant resulting from the delay. See Barker v. Wingo, 407 U.S. 514, 530 (1972);
Munoz, 991 S.W.2d at 821. The conduct of both the prosecutor and the defendant must be weighed
in balancing the four factors, and no single factor is a necessary or sufficient condition to the finding
of a speedy trial violation. See Barker, 407 U.S. at 530, 533; Munoz, 991 S.W.2d at 821.

Length of the Delay

 The length of the delay is the triggering mechanism for analysis of the other Barker factors.
Munoz, 991 S.W.2d at 821. Further analysis is required if the length of the delay is "presumptively
prejudicial." State v. Rangel, 980 S.W.2d 840, 843 (Tex.App.--San Antonio 1998, no pet.). The
length of the delay is measured from the time the defendant is arrested or formally accused. See
Harris v. State, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992). Generally, a delay of eight months
or longer is considered "presumptively prejudicial" and triggers speedy trial analysis. See Knox v.
State, 934 S.W.2d 678, 681 (Tex. Crim. App. 1996); Rangel, 980 S.W.2d at 843.

 Appellant was arrested on April 4, 2000. He filed his motion for speedy trial on July 13,
2001, and the motion was heard on July 26, 2001. The delay between Hudson's arrest and the
hearing on his motion was fifteen months. This delay is of a sufficient length to trigger our analysis
of the other Barker factors. 

Reasons for the Delay

 The State has the burden of justifying a lengthy delay. See Rangel, 980 S.W.2d at 843.
Different weights are assigned to different reasons for a delay. See Munoz, 991 S.W.2d at 822. A
deliberate attempt to delay a trial is weighed heavily against the State, while more neutral reasons,
such as negligence or overcrowded dockets, are weighed less heavily. See id. If the record is silent
regarding the reason for the delay, we presume that no valid reason for the delay existed. See Turner
v. State, 545 S.W.2d 133, 137-38 (Tex. Crim. App. 1976); Rangel, 980 S.W.2d at 844.

 Appellant was arrested on April 4, 2000 for driving while intoxicated--subsequent offense.
Appellant's indictment was filed on May 19, 2000. Appellant was required to appear before the trial
court on May 25, 2000. The docket sheet indicates that appellant failed to appear, (2) and a capias
subsequently issued. It was not until March 7, 2001, that the trial court received word that appellant
was in state jail in Mineral Wells, Texas. A hearing was set for March 29, 2001, but reset because
appellant was absent. The docket sheet indicates that the trial court needed a bench warrant. On
April 25, 2001, the case was reset again but this time for unknown reasons. On May 15, 2001
appellant was appointed counsel, arraigned, and pleaded not guilty. Appellant filed his motion for
speedy trial on July 13, 2001 which was heard on July 26, 2001 and denied on August 6, 2001.

 The State failed to introduce any evidence to justify the delay between the time of appellant's
arrest and the date his motion for speedy trial was heard. Appellant admits he failed to appear on
May 25, 2000, but argues that the State was grossly negligent in delaying his trial because after his
subsequent arrest in Bexar County on or about May 27, 2000, the State should have known that he
was in the custody of the State. (3) Because the record is silent regarding the State's reason for delay,
we must presume that no valid reason for the delay existed. 

Assertion of Right

 The third factor that a trial court must consider is the defendant's assertion of his right to a
speedy trial. See Munoz, 991 S.W.2d at 825. The defendant is responsible for asserting or
demanding his right to a speedy trial. See id. A lengthy delay or lack of persistence in asserting the
right attenuates a speedy trial claim. See Emery v. State, 881 S.W.2d 702, 709 (Tex. Crim. App.
1994). 

 Appellant asserted his right to a speedy trial in July 2001, over fifteen months after his arrest.
Appellant testified that he attempted to contact Wilson County authorities by letter on several
occasions but admitted that he had no documentation to prove it. Nevertheless, on March 7, 2001,
the trial court received a telephone call with information that appellant was in state jail in Mineral
Wells, Texas. A hearing was subsequently set for March 29, 2001, but reset twice. Appellant
testified that after his case had been reset twice, he continued to write because he "couldn't seem to
get any relief." (4) On May 15, 2001 appellant was arraigned and pleaded not guilty. The docket sheet
indicates that the appellant subsequently made two scheduled appearances before the court for
reasons unknown to this court. It was after these two appearances that appellant filed his motion for
speedy trial on July 13, 2001. On July 23, 2001, appellant was to make his third scheduled
appearance before the court but his counsel was not present; therefore, the case was reset for July
26, 2001. It was on that day that appellant's motion was heard and subsequently denied. Although
appellant argues that he attempted to contact the proper authorities to inform them of his
whereabouts, there is no evidence that appellant attempted to invoke his right to a speedy trial until
July 13, 2001, about fifteen months after his arrest. Appellant's delay and lack of persistence in
asserting his right to a speedy trial weigh against him. See Grayless v. State, 567 S.W.2d 216, 221
(Tex. Crim. App. 1978) (stating fourteen month delay held to be untimely assertion of right).

Prejudice Caused by Delay

 The prejudice to the defendant is assessed in the light of the interests which the speedy trial
right is designed to protect. See Munoz, 991 S.W.2d at 826. These interests are: (1) preventing
oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3)
limiting the possibility that the defense will be impaired. See id. The defendant has the burden to
make some showing of prejudice. See id.

 Appellant concedes that he was not subjected to oppressive pretrial incarceration. (5) However,
he does argue that he was subject to anxiety and concern over the case before he was arraigned on
the charge. Appellant argues that this is evidenced by a letter he sent to his family urging them to
notify Wilson County authorities of his whereabouts. (6) Appellant does not point to any other evidence
to support his argument that he suffered anxiety and concern. In addition, he argues that his defense
was impaired because he would be unable to "visually identify" an eyewitness to the events that made
the basis of the DWI charge against him. (7) We do not see how being able to "visually identify" a
witness is relevant in this case. In fact, on cross-examination, the State informed appellant that the
victim's mother was on the State's witness list and was subpoenaed to court. We conclude, based
on this evidence, that appellant has failed to make a showing of some prejudice. 

 However, appellant argues that even without a showing of actual prejudice, the State's failure
to prosecute warrants relief. Appellant analogizes his case to Doggett v. United States, 505 U.S. 647
(1992) in which the Supreme Court found that an eight and one-half year delay between Doggett's
indictment and arrest violated his right to a speedy trial. Appellant argues that the State had the
burden of overcoming the presumption of prejudice because the Doggett Court noted that a "post-accusation delay approaching one year is generally considered to have become 'presumptively
prejudicial.'" Although appellant correctly quotes Doggett, appellant misconstrues the Court's
opinion. The Court noted that lower courts have generally found that a delay approaching one year
suffices to trigger the Barker analysis. See id. at 652 & n. 1. The Court further noted, "[w]hile such
presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other
Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of
delay." Id. at 655-56 (citation omitted). The Court opined that the State acted negligently in failing
to prosecute Doggett but noted "to warrant granting relief, negligence unaccompanied by
particularized trial prejudice must have lasted longer than negligence demonstrably causing such
prejudice." Id. at 656. Therefore, the Court concluded that Dogget was entitled to relief because
the State's negligence caused a "delay six times as long as that generally sufficient to trigger judicial
review." Id. at 657. In this case, appellant suffered no actual prejudice, and even if we assume the
State was negligent, the fifteen month delay was not sufficient to warrant relief. 

Balancing

 Balancing the Barker factors, we conclude that the trial court did not err in denying
appellant's motion to dismiss for violation of his constitutional right to a speedy trial. Although the
State failed to introduce any reason for the delay, appellant failed to assert his right for over fifteen
months, and he failed to show that he was prejudiced by the delay. In addition, even if we assume
the State was negligent, it did not cause such a delay sufficient to warrant relief. Appellant's issue
is overruled, and the judgment of the trial court is affirmed.

 

 Alma L. López, Justice

Do Not Publish
1. Appellant does not discuss or brief the issue regarding any violation of his due process rights; therefore, we
deem the issue waived. See Traylor v. State, 892 S.W.2d 447, 449 (Tex. App.--Beaumont 1995, writ ref'd); see also
Tex. R. App. P. 38.1(h).
2. Appellant alleges in his brief that he failed to appear because he was at the Veteran's Administration
Hospital in San Antonio, Texas, undergoing treatment for alcoholism. However, at the hearing, when the trial court
asked appellant: "Can you tell the court why you did not appear on that day?," appellant responded: "Well, no, I don't
- - I don't know exactly what day I was released from the Veteran's Administration Hospital, that was all."
Nevertheless, on or about May 27, 2000, a few days after he failed to appear, appellant was arrested for DWI in Bexar
County. Appellant remained in the Bexar County jail awaiting trial on that charge. After he was convicted, he was
transferred to state jail in Mineral Wells, Texas.
3. Appellant argues, without citing any authority for his proposition: "Considering the advanced state of
telecommunications in the year 2000, it would be disingenuous for the State to now claim to be unaware that it actually
had appellant in custody from May 2000 to May of 2001. The State must be held to have known [appellant] was in
the custody of the State, and to have done nothing about it." We will not so hold. The State did not claim that it was
unaware that it had appellant in custody. In fact, the record is silent as to the reasons for the State's delay. As such,
we only presume that no valid reason for the delay existed. See Turner, 545 S.W.2d at 137-38.
4. Appellant testified at his hearing on his motion to dismiss that it was his letter dated May 5, 2001, that
resulted in a bench-warrant to Wilson County. He testified that the letter complained that his trial was reset two or
three times and he could not seem to get any relief. The letter was not made part of the record.
5. At the time of the hearing on his motion to dismiss, appellant had been incarcerated on another charge since
on or about May 27, 2000.
6. The letter was appellant's Notice to Appear in Wilson County on May 25, 2000. At the top of the letter,
appellant wrote: "Call these people & tell them where I am."
7. Appellant's counsel asked: "Do you think if [the two ladies that were present at the time of your arrest] were
sitting in this courtroom today that you could identify them and point them out to me?" Appellant responded: "No.
I mean, I could tell you general - give you a general description, but, no, I don't believe I could."