Affirmed and Opinion filed October 27, 2005









Affirmed and Opinion filed October 27, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00968-CR

NO. 14-04-00969-CR

____________

 

THE STATE
OF TEXAS, Appellant

 

V.

 

JAMES
CLIVE BELCHER, Appellee

________________________________________________________________

 

On Appeal from the 56th District Court

Galveston County, Texas

Trial Court Cause Nos. 99CR0496 & 99CR0497

________________________________________________________________

 

O P I N I O N








This is an appeal by the State of
the trial court=s order
granting appellee James Clive Belcher=s motion
for new trial.  The State=s only
argument on appeal is that the trial court erred in granting Belcher=s motion
for new trial because Belcher allegedly did not show properly preserved error
that would have entitled him to reversal of his conviction on appeal had the
trial court not granted a new trial. 
Because this argument is premised on an incorrect standard of review and
otherwise lacks merit, we overrule the State=s only
challenge on appeal and affirm the trial court=s order. 

I.  Factual
and Procedural Background

Belcher was charged with
aggravated robbery and aggravated kidnapping. 
At his trial on these charges, the trial court shuffled the jury panel
before voir dire began.  Prior to the
jury shuffle, Belcher informed his counsel that he knew panel member David
Elliott.  Belcher=s counsel
made a notation on his prospective juror list to strike Elliott from the panel.
During voir dire, Belcher=s counsel
asked the panel if anyone knew Belcher. 
One prospective juror, Melinda Bahr, raised her hand and was then asked
specific questions regarding her acquaintance with Belcher.  Elliott did not raise his hand, and Belcher=s counsel
did not ask him any specific questions. 
Belcher=s counsel unsuccessfully moved to
strike Bahr for cause and then requested an additional peremptory challenge to
use against her.  The trial court denied
both requests.  








After both sides concluded
questioning of the venire members, the trial court ordered a recess to allow
the parties and their counsel to decide how to exercise their peremptory
strikes and to present these strikes to the court.  As sheriff=s
deputies were escorting Belcher and his counsel to a location where Belcher
could confer with his counsel about the peremptory strikes, Belcher and one of
the deputies had a confrontation.  The
deputy with whom Belcher had the confrontation obtained a stun belt and
attached it to Belcher=s body.[1]  Although Belcher did not act in an aggressive
or threatening manner, shortly after the stun belt was attached, one of the
deputies accidentally activated the stun belt and stunned Belcher.  Because he had been stunned, Belcher was not
able to confer with his counsel in deciding how to exercise his peremptory
strikes.[2]

Venire member Elliott was not
stricken either for cause or peremptorily. 
When the jury was seated, the judge asked if there were any objections
to the jury being sworn, and Belcher=s counsel
did not object.  At some point at the
beginning of trial, Belcher informed his counsel that Elliott was on the
jury.  Because he had been stunned,
Belcher did not notice that his counsel had failed to exercise a peremptory
strike against Elliott until the jury had been sworn and the first witness had
been called.  Belcher=s counsel
thereafter informed the trial court that Belcher and Elliott knew each
other.  Belcher=s counsel
told the court that he had failed to notice that Elliott was going to be seated
on the jury until after he was actually seated on the jury.  The following morning, the trial court
permitted defense counsel to question Elliott outside the presence of the
jury.  Elliott denied that he knew
Belcher.  Belcher and Belcher=s girlfriend
both testified that Belcher and Elliott had gone to school together and knew
each other.  Belcher=s counsel
requested to continue the trial with eleven jurors, but the trial court denied
this request. 

Trial proceeded, and the jury
convicted Belcher of both aggravated robbery and aggravated kidnapping.  On May 17, 2000, the trial court sentenced
Belcher to thirty years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice.  On May 24, 2000, Belcher filed
a motion for new trial.  On June 16,
2000, he filed an amended motion for new trial. 
Belcher filed both of these pleadings timely.  








On July 27, 2000, the trial court
held an evidentiary hearing on this motion for new trial in which all of the
facts and circumstances surrounding the motion for new trial were
addressed.  On August 1, 2000, the trial
court attempted to grant Belcher=s motion
for new trial; however, the court no longer had authority to do so because the
motion had been overruled by operation of law the day before, which was the
seventy-fifth day after the trial court imposed sentence.  See Tex.
R. App. P. 21.8 (a), (c).  The
State appealed this order, and this court vacated it based on the trial court=s lack of
authority.  See State v. Belcher,
Nos. 14-00-01197-CR & 14-00-01198-CR, 2001 WL 306181 (Tex. App.CHouston
[14th Dist.] Mar. 29, 2001, pet. ref=d) (not
designated for publication).  

On Belcher=s first
appeal, this court, in a plurality decision, held that, based on the
ineffective assistance of Belcher=s trial
counsel, Belcher was entitled to a new hearing on his motion for new
trial.  See Belcher v. State, 93
S.W.3d 593, 600B01 (Tex.
App.CHouston
[14th Dist.] 2002 pet. dism=d) (order
based on plurality decision).  








After a second hearing on Belcher=s motion
for new trial, the trial court granted Belcher a new trial based on the
improper seating of Elliott on the jury.[3]  In its order, the trial court explained the
impropriety in seating Elliott on the jury as follows: (1) the testimony of
Curtis Crumby[4]
makes it clear that Elliott was not truthful when he failed to respond to
Belcher=s counsel=s
question of whether any of the venire members knew Belcher; (2) Elliott=s failure
to be truthful deprived Belcher=s counsel
of the opportunity to explore any bias Elliott had; (3) Belcher=s
counsel, by his own admission, erred in failing to use a peremptory strike
against Elliott after being instructed to do so by Belcher; and (4) Belcher was
accidentally stunned by a stun belt he was wearing, depriving Belcher of his
right to be present at trial while the peremptory strikes were being exercised
and preventing him from participating in an important phase of the trial,
probably contributing to his lawyer=s error
in failing to exercise a peremptory strike against Elliott.  The State filed this appeal.

II.  Standard of Review

The
granting of a new trial rests within the sound discretion of the trial
court.  Lewis v. State, 911 S.W.2d
1, 7 (Tex. Crim. App. 1995); State v. Gonzalez, 855 S.W.2d 692,
696 (Tex. Crim. App. 1993) (four-justice plurality op.).  An appellate court will reverse the trial
court=s
decision only when that decision is so clearly wrong as to lie outside the zone
in which reasonable persons might disagree. 
See Gonzalez, 855 S.W.2d at 695 n.4.  An appellate court is not to substitute its
judgment for that of the trial court; rather the appellate court=s role is
to examine the record to determine whether the trial court granted a new trial
without reference to any guiding rules or principles or, in other words,
whether the trial court=s
decision was arbitrary or unreasonable.  See
Lewis, 911 S.W.2d at 7.  The
appellate court is to presume the trial court correctly granted a new trial,
and the State has the burden to establish the contrary.  See Lee v. State, 322 S.W.2d 260, 262
(Tex. Crim. App. 1958).  If no findings
of fact or conclusions of law were made or requested by the trial court, the
trial court=s judgment granting a new trial
must be upheld if any appropriate ground exists to support it.  State v. Read, 965 S.W.2d 74, 77B78 (Tex.
App.CAustin
1998, no pet.). 

III.  Analysis

A.        For the trial court to have properly granted Belcher=s motion for new trial, did Belcher have to show
properly preserved error that would have entitled him to reversal on appeal
from his conviction had the trial court not granted a new trial?








The State=s sole
argument on appeal is that the trial court erred in granting a new trial
because Belcher did not show properly preserved, reversible error under the
legal standard enunciated in Gonzales v. State, 3 S.W.3d 915, 916B17 (Tex.
Crim. App. 1999).  In its appellate
brief, the State never mentions the abuse-of discretion standard of review that
we must apply in favor of the trial court=s
granting of a new trial.  Further, the
State does not cite any cases involving an appeal from a trial court=s
granting of a motion for new trial.  The
State fails to mention that, because Belcher prevailed on his motion for new
trial in the court below, we must presume the trial court resolved any disputed
fact issues in Belcher=s favor,
and we are required to defer to these implied findings of fact, if supported by
evidence in the record.[5]
 See State v. Munoz, 991 S.W.2d
818, 821 (Tex. Crim. App. 1999).  None of
the cases cited by the State hold that a trial court may grant a new trial only
after the movant shows error that would require reversal upon appeal from the
conviction in question.  The State=s
argument misses the mark by equating the standard of review on direct appeal
from a conviction with the trial court=s
exercise of discretion in determining whether to grant a motion for new trial.








In State v. Gonzalez, the
Texas Court of Criminal Appeals affirmed the intermediate court=s
affirmance of a new-trial order.  See
Gonzalez, 855 S.W.2d at 693.  In that
case Gonzalez did not show error that would require reversal upon appeal from the
conviction in question.  See id.
at 693B94.  Rather, Gonzalez simply showed that the
testimony of a missing witnessChis uncleCcould
have had a substantial impact on the trial court=s
sentencing decision and that his uncle was unable to testify at the original
sentencing hearing.  See id.  The trial court determined that it was in the
interest of justice to grant Gonzalez a new trial and to hear the uncle=s
testimony at a new sentencing hearing.  See
id.  There is no mention in the Gonzalez
opinion that Gonzalez exercised due diligence, was unable to obtain his uncle=s
testimony by affidavit or other means, or that Gonzalez sought postponement of
the sentencing hearing so that his uncle could be present.  See id.  In Gonzalez, had the trial court
denied the motion for new trial and had Gonzalez appealed, there would have
been no reversible error based on the uncle=s failure
to testify at the sentencing hearing.  See
id.  

Furthermore, the Gonzalez
opinion approves the intermediate court=s
reasoning in relying on two civil cases for the proposition that a trial court,
in its discretion, may grant a new trial in the interest of justice.  See id. at 694 (citing State v.
Gonzalez, 820 S.W.2d 9, 11 (Tex. App.CDallas
1991), aff=d, 855
S.W.2d 692 (Tex. Crim. App. 1993) and approving of the intermediate court=s
reliance on Champion Int=l Corp.
v. Twelfth Court of Appeals, 762 S.W.2d 898, 899 (Tex. 1988) and Johnson
v. Fourth Court of Appeals, 700 S.W.2d 916, 918 (Tex. 1985)).  In the two civil cases cited in Gonzalez,
the trial court granted a new trial without any finding that reversible
error had occurred, and there is no indication that the reason for granting the
new trial would have constituted reversible error on appeal if a new trial had
not been granted.  See Champion
Int=l Corp., 762
S.W.2d at 899; Johnson, 700 S.W.2d at 918.  Other courts of appeals also have held that
the existence in the record of reversible error is not a prerequisite for
granting a new trial.  See State
v. Kelley, 20 S.W.3d 147, 155 (Tex. App.CTexarkana
2000, no pet.) (holding that, even though record did not show any harm from
trial counsel=s deficient performance in
failing to object to seating of juror as to whom counsel had exercised a
peremptory strike, trial court still had discretion to grant a new trial based
on trial counsel=s
deficient performance in this regard); State v. Trevino, 930 S.W.2d 713,
716 (Tex. App.CCorpus Christi 1996, pet. ref=d)
(holding reversible error need not be shown as to trial court=s charge,
which omitted an accomplice-witness instruction, for the trial court to have
discretion to grant a new trial).








It would be improper to analyze this
case as if it were an appeal from a conviction, rather than an appeal from the
granting of a new trial.  Even if on
appeal from a conviction Belcher would not have been able to obtain a reversal
based on the seating of Elliott on the jury, this does not mean that the trial
court abused its discretion in granting a new trial.  Therefore, the State=s only
argument on appeal lacks merit.

B.        Did the trial court abuse its discretion in granting a new
trial?

Although we have rejected the
State=s only
argument on appeal, we note that, even if the State had argued that the trial
court abused its discretion in granting Belcher a new trial,  the result would not be different.  For at least 130 years, Texas trial courts
have had the discretion to grant new trials in the interest of justice.  See Gonzalez, 855 S.W.2d at 694; Mullins
v. State, 37 Tex. 337, 339B40 (1872)
(holding of the Texas Supreme Court exercising criminal jurisdiction).  The discretion of a Texas trial judge to
order a new trial when she concludes the trial over which she has presided has
resulted in a miscarriage of justice is an important part of our judicial
system.  See Gonzalez, 855 S.W.2d
at 694 (citing with approval statement by Mullins court that discretion
of district courts to grant new trials is a crucial protection that these
courts should not hesitate to use whenever justice has not been attained); Trevino,
930 S.W.2d at 716 (stating that, when a trial judge determines that justice has
not been done, that judge has not only the power but also the obligation to
order a new trial and that, since appellate courts lack this power, it is
imperative that the trial judge exercise this power when necessary).

As detailed above, viewing the
evidence in favor of the trial court=s ruling,
the trial court was presented with an unusual fact pattern:








!         Belcher knew Elliott as a childhood friend, and Elliott
would know about Belcher=s past criminal
activity.  Nonetheless, when Belcher=s counsel asked the venire
members if any of them knew Belcher, Elliott did not raise his hand, and later
he specifically stated under oath that he did not know Belcher.[6]

!         Belcher instructed his counsel to exercise a peremptory
strike against Elliott, and Belcher=s counsel, by his own
admission, erred in not carrying out his client=s instructions to exercise
a strike against Elliott. 

!         As Belcher was going to confer with his trial counsel about
how Belcher should exercise his peremptory strikes, one of the deputies
accidentally activated the stun belt that had been attached to Belcher=s body, thus stunning
Belcher.  Because he had been stunned,
Belcher was not able to confer with his counsel in deciding how to exercise his
peremptory strikes, and Belcher did not notice that his counsel had failed to
exercise a peremptory strike against Elliott until the jury had been sworn and
the first witness had been called.

This was not a typical voir
dire.  Viewing the evidence under the
applicable standard of review, Juror Elliott was not truthful, and despite
Belcher=s
instruction to exercise a peremptory strike against Elliott, Belcher=s counsel
mistakenly failed to do so.[7]  Furthermore, Belcher was unable to point out
his counsel=s mistake or remind his counsel
to exercise a peremptory strike against Elliott because Belcher was stunned
just before the peremptory-strike phase of voir dire.  








One of the most basic rights
guaranteed by the Confrontation Clause is the defendant=s right
to be present at every stage of his trial. 
Illinois v. Allen, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058, 25 L.
Ed.2d 353 (1970).  Although physically
present, Belcher was incapacitated and unable to participate in an important
part of his trialCthe
exercise of his peremptory strikes. 
Belcher=s accidental stunning also interfered
with his ability to confer with his counsel during the exercise of his
peremptory strikes.  See United States
v. Durham, 287 F.3d 1297, 1305B06 (11th
Cir. 2002) (noting court=s serious
concern regarding stun belt=s
capacity to disrupt defendants=
constitutional rights to be present at trial and to participate in their defense).  One federal court of appeals has stated that
the accidental triggering of a defendant=s stun
belt during trial Awould be
an egregious breach of both appropriate courtroom decorum and [the defendant=s] most
fundamental trial rights.@  See id. at 1307.  

Based on the unusual facts and
circumstances that led to the seating of Elliott on the jury, the trial court
did not abuse its discretion in granting Belcher a new trial.[8]  See Kelley, 20 S.W.3d at 155 (holding
that, even though record did not show any prejudice from trial counsel=s
deficient performance in failing to object to seating of juror as to whom
counsel had exercised a peremptory strike, trial court still had discretion to
grant a new trial based on trial counsel=s
deficient performance in this regard); State v. Gill, 967 S.W.2d 540,
542B43 (Tex.
App.CAustin
1998, pet. ref=d) (holding trial court did not
err in granting new trial in interest of justice because evidence showed the
integrity and reliability of the trial had been undermined by defense counsel=s health
problems, senility, hearing loss, and reduced vision, regardless of whether
defense counsel=s conduct
violated both prongs of the Strickland test for ineffective assistance
of counsel); Trevino, 930 S.W.2d at 716 (holding that trial court did
not abuse its discretion in granting new trial based on unobjected-to failure
of jury charge to contain accomplice-witness instruction).  We overrule the State=s sole issue
on appeal.

IV.  Conclusion








To prevail on his motion for new trial, Belcher did not have to prove to the
trial court that properly preserved error occurred during his trial that would
entitle him to reversal on appeal from his conviction.  Because the State=s argument is premised on an
incorrect standard of review and is without merit, we overrule the State=s sole issue and affirm the trial
court=s order granting a new trial.  The unusual facts of this case
show that the trial court=s
decision to grant Belcher a new trial was not so clearly wrong as to lie
outside the zone in which reasonable persons might disagree.  

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Opinion filed October 27, 2005.

Panel consists of Chief Justice Hedges and Justices Fowler and Frost.

Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  A stun belt is
a device placed around a defendant=s
midsection that uses an electric shock to temporarily disable the defendant if
his actions pose a security threat.  The
belt is controlled by a remote device held by a security official in the
courtroom.  If the belt is activated, the
defendant will receive a powerful electric shock sufficient to temporarily
incapacitate him.  See United States
v. Durham, 287 F.3d 1297, 1301 (11th Cir. 2002).  





[2]  Because
Belcher prevailed in the trial court on his motion for new trial, we must
presume the trial court resolved any disputed fact issues in Belcher=s favor, and we are required to defer to these implied
findings of fact as long as the record supports them.  See State v. Munoz, 991 S.W.2d 818, 821
(Tex. Crim. App. 1999).  In any event,
the State has not asserted in the trial court or on appeal that Belcher was not
stunned, and a sheriff=s deputy corroborated Belcher=s testimony by testifying at the new-trial hearing
that he saw Belcher being stunned by the stun belt when one of the other
deputies accidentally flipped both of the switches on the stun belt=s control box.  





[3]  This court
abated Belcher=s appeal pending the second new trial hearing; however,
after the trial court granted Belcher a new trial, we dismissed Belcher=s appeal as moot.  See Belcher v. State, Nos.
14-00-00811-CR & 14-00-00812-CR, 2004 WL 1946073 (Tex. App.CHouston [14th Dist.] Sept. 2, 2004, no pet.) (not
designated for publication).





[4]  Curtis Crumby
went to the same high school as Belcher and Elliott, and he used to be the
next-door neighbor of Belcher in the 1970s.





[5]  Indeed,
several statements the State makes contradict this standard of review.  For example, the State mentions an alleged
statement by Belcher that he and Elliott were best friends, and the State asks
the court to consider how Belcher could have been harmed by having his best
friend on the jury.  However, Belcher
also testified that Elliott was the best friend of Belcher=s next-door neighbor during childhood and that Belcher
and Elliott were childhood friends. 
Belcher also testified that Elliott would know about his prior
conviction and eight-year sentence for aggravated assault.  The State also asserts that, if we believe
Elliott, then Belcher and Elliott never knew each other.  However, we presume the trial court found the
facts in favor of its ruling, and there is evidence to support the trial court=s implied findings. 
See Munoz, 991 S.W.2d at 821. 






[6]  Elliott=s untruthfulness makes it unlikely that any additional
questioning of Elliott during voir dire would have produced evidence sufficient
to justify striking him for cause.





[7]  Having
apparently come to the conclusion that Elliott had not been truthful in order
to serve on the jury, the trial court reasonably may have concluded that this
cast serious doubt on whether Elliot was an unbiased member of the jury. 





[8]  The State has
not argued on appeal that the trial court granted a new trial based on a ground
not asserted in the motion for new trial, so that issue is not before us.  Even if it were, presuming for the sake of
argument that a trial court granting a motion for new trial is limited to the
grounds stated in the motion, the trial court granted a new trial based on
injustice regarding the seating of Elliott on the jury, which was a ground
asserted in the motion for new trial. 
The motion for new trial alleged sufficient grounds to apprise the trial
court and the State as to why Belcher believed he was entitled to a new trial.  See Gonzalez, 855 S.W.2d at 694B95.