Opinion issued November 13, 2008
 





    







In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-08-00263-CR
____________

VICTOR CANTU, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 52nd District Court
Coryell County, Texas
Trial Court Cause No. F0-04-17403



 
 MEMORANDUM OPINION
            A jury convicted appellant, Victor Cantu, on two counts of harassment by a
person in correctional facilities, and the trial court assessed punishment at nine years
in prison for each count, to be served concurrently after completion of his current
sentence. See Tex. Penal Code Ann. § 22.11(a)(1) (Vernon 2003). We determine
whether appellant’s right to a speedy trial was violated and whether the trial court
erred when it admitted extraneous evidence of incidents in which appellant had
committed offenses similar to the one being tried. We affirm.
Background
          At about 6:30 p.m. on February 20, 2003, Texas Correctional Officer Calvin
Woods was on duty in the administrative segregation area of the Hughes Unit, a
maximum security correctional facility. While passing out necessities, Woods came
into contact with appellant. At this time, appellant was serving a 60-year prison term
for which he was being housed in cell 39 of the administrative segregation area. 
Woods asked appellant if he needed necessities; appellant declined. Woods
continued on to the next cell when appellant threw out a liquid onto the officer’s
uniform. The liquid “smelled like feces and urine.” Some of it also struck inmate
Jeffery Williams, who was helping Officer Woods hand out necessities. The brown
liquid struck Williams on the side of the head and shirt.  
          Texas Correctional Officer Walter Glover was stationed in the “picket” or
control center that overlooked cell 39, from where he observed Woods and Williams
passing out necessities. After passing by appellant’s cell, Woods and Williams “both
recoiled from something happening.” Both Woods and Williams had a substance on
them that appeared and smelled like urine or fecal matter. Texas Department of
Public Health Chemist Lori McElhaney testified that tests that she performed on the
uniforms confirmed that the substance was feces.  
          In contrast, appellant denied throwing the fecal matter on Officer Woods or
inmate Williams. Appellant testified that he believed that the inmate in neighboring
cell 38 had thrown the liquid. During direct and cross-examination, appellant
repeatedly discussed his ability and the techniques that he and other inmates used to
“shoot” liquid substances through the cell doors at those who passed by. 
          At trial, the State sought to admit 18 separate extraneous offenses in which
appellant had “chunked” on other inmates who had passed in front of his cell. The
trial court admitted the evidence, but limited the number of offenses to “four or five.” 
After appellant had testified and the defense had rested, the State called four
witnesses in rebuttal. The first witness was a former correctional officer, Brian Heck,
who testified that appellant had threatened to “chunk s---” on him. The other three
witnesses were inmates. Rafael Esteves testified that appellant had “chunked” on him
as he was sweeping in front of appellant’s cell. The second witness, Steven
Southhall, testified that appellant had “chunked” on him as he was passing out food
in front of appellant’s cell. The third witness, David Clark, testified that appellant
had “chunked” on him as he walked by appellant’s cell. 
 
          Appellant was indicted on August 26, 2004 and was not brought to trial until
December 3, 2007. Appellant’s counsel submitted a motion on the day of trial to
dismiss the indictment for denial of a speedy trial. This motion was denied by the
trial court.
Denial of a Speedy Trial
          In point of error one, appellant contends that his speedy trial right was violated
due to a 39-month delay between his indictment and trial and that such delay caused
him prejudice. Appellant argues that this prejudice was caused by the loss of four
potential witnesses. Two of these witnesses died, and two were missing. 
A.      The Standard of Review
          In our review of a speedy trial denial, we apply an abuse of discretion standard
to any factual issues, while using a de novo standard for the legal conclusions. 
Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). 
B.      The Law
          The United States Constitution provides, “In all criminal prosecutions, the
accused shall enjoy the right to a speedy and public trial . . . .” U.S. Const. amend.
VI. The Texas Constitution also grants this right. Tex. Const. art. I, § 10. Texas
Courts have traditionally analyzed speedy-trial-violation challenges under a balancing
test announced by the United States Supreme Court in the case of Barker v. Wingo,
407 U.S. 514, 92 S. Ct. 2182 (1972). See Zamorano, 84 S.W.3d at 648. We employ
this balancing test by analyzing four factors: (1) the length of the delay; (2) the reason
for the delay; (3) the defendant’s assertion of his right; and (4) the prejudice to the
defendant. See Barker, 407 U.S. at 530, 92 S. Ct. at 2192. None of these factors
should be considered necessary or sufficient in the finding of a deprivation of the
right to a speedy trial; rather, they are related factors that must be considered together
with such other circumstances as may be relevant. See State v. Munoz, 991 S.W.2d
818, 821 (Tex. Crim. App. 1999). 
C.      The Speedy Trial Analysis 
          1.       The Length of the Delay
          The length of the delay between the date of indictment and the date of trial
functions as a “triggering mechanism” for the analysis of the other three factors. 
Barker, 407 U.S. at 530, 92 S. Ct. at 2192; Munoz, 991 S.W.2d at 821. The defendant
must allege that the delay in his or her case has crossed the line from ordinary delay
to “presumptively prejudicial” delay. Doggett v. United States, 505 U.S. 647,
651–52, 112 S. Ct. 2686, 2690 (1992). For the alleged delay to qualify as
“presumptively prejudicial,” it must be reviewed in the context of the particular case
in which it is alleged. See Barker, 407 U.S. at 530–31, 92 S. Ct. at 2192. The 39-month delay in this case is, without question, substantial enough to trigger a speedy
trial analysis. See Shaw v. State, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003)
(concluding that 38-month delay between indictment and trial was long enough to
trigger speedy trial analysis).
          2.       The Reason for the Delay
          An examination of this factor requires an assignment of “different weights to
different reasons.” Barker, 407 U.S. at 531, 92 S. Ct. at 2192; see Munoz, 991
S.W.2d at 822. A finding that the government deliberately attempted to delay the trial
would require us to weigh this factor heavily against the State. Id. However, a more
neutral reason, such as negligence or an overcrowded docket, should be weighed less
heavily. Id.
          In this case, the State offered little in the way of reasons for the delay. The
prosecutor stated at trial that the case in question had been set on the docket four
times before the eventual trial date and that each time, the State had announced ready. 
The prosecutor also stated that it was the court coordinator’s responsibility to set
cases for trial and that neither he nor anyone else in the prosecutors’ office had any
control over that function. Additionally, the record is devoid of any resetting
documents, motions for continuance, or explanations on the docket sheet for the
various postponements. 
          Although the prosecutor’s statements appear to transfer responsibility to the
court coordinator and thus away from the State, they do not present a reason for the
39-month delay. When no reason for the delay is given, this factor must weigh
against the State. See Dragoo v. State, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). 
However, when weighing this factor, “a court may presume neither a deliberate
attempt on the part of the State to prejudice the defense nor a valid reason for the
delay.” Id. Therefore, we hold that this factor weighs against the State, but “it is not
weighed heavily.” Id. 
          3.       Appellant’s Assertion of His Right
          The Barker Court rejected the rigid “demand-waiver” rule, which held that a
defendant “forever” waived any speedy trial challenge if he never, in fact, actually
asserted his right to a speedy trial. Barker, 407 U.S. at 527–29, 92 S. Ct. at 2190–91. 
However, the defendant “still is responsible for asserting or demanding his right to
a speedy trial.” Munoz, 991 S.W.2d at 825. The Barker Court also emphasized that
the “failure to assert the right will make it difficult for a defendant to prove that he
was denied a speedy trial.” Barker, 407 U.S. at 532, 92 S. Ct. at 2193. 
          In this case, appellant argues that he asserted his right in two letters written
within a year after his indictment. Both of these letters were written by appellant
himself, even though he was, at all times after the indictment, represented by counsel. 
There is no indication that the trial court ever saw or was made aware of these letters
before the day of trial. 
          The first letter, written November 11, 2004, contains no language that could
be construed as an assertion of a speedy trial right. In it, appellant simply asked when
his court date would be. The second letter, written July 7, 2005, is a closer call. In
it, appellant did request that his case be “put in the front of the line.” However, when
read in context of the entire letter, appellant was asking to go first on the date when
he and 46 other inmates were scheduled to appear in court, not to appear before the
court as soon as possible. 
          It is alternatively argued by the State that, even if the letters are interpreted as
assertions for a speedy trial, these letters should be ignored for violating the rule
against dual representation on the part of a defendant. Texas courts have repeatedly
held that there is no right to dual representation. See Rudd v. State, 616 S.W.2d 623,
625 (Tex. Crim. App. 1981). Accordingly, “a trial court is free to disregard any pro
se motions presented by a defendant who is represented by counsel.” Robinson v.
State, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007); see Llano v. State, 16 S.W.3d
197, 198 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d) (holding that when
defendant is represented by counsel, court is not required to consider pro se
pleadings). 
          In this case, appellant’s attorney did not raise any speedy trial violations during
the 39-month delay. The first pleading on the matter was the motion to dismiss for
lack of a speedy trial, which was submitted by appellant’s attorney on the day of trial. 
An assertion made on the day of trial should be considered untimely. See Harris v.
State, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) (holding that speedy trial
assertion on day of trial was not timely made), abrogated on other grounds by
Cockrell v. State, 933 S.W.2d 73, 88 (Tex. Crim. App. 1996). “Lack of a timely
demand for a speedy trial indicates strongly that he (defendant) did not really want
a speedy trial.” Id. (emphasis added). Here, we are not required to consider the
letters written by appellant, which appellant’s attorney showed to the trial court for
the first time on the day of trial. The only pleading submitted by counsel on the
matter was submitted the day of trial and did not ask for a speedy trial, but instead
asked for a dismissal for lack of a speedy trial. Thus, we hold that this factor weighs
heavily against appellant.
          4.       Prejudice to Appellant
          This factor is viewed in light of the interests that the speedy trial right was
meant to protect. Barker, 407 U.S. at 532, 92 S. Ct. at 2193. These interests are (1)
to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of
the accused; and (3) to limit the possibility that the defense will be impaired. Id.;
Munoz, 991 S.W.2d at 826. The third factor is to be regarded with the most
importance because it is paramount to our judicial system that an accused have the
ability to defend himself adequately. See id. It is not essential that a defendant show
affirmative proof of prejudice “because excessive delay presumptively compromises
the reliability of a trial.” Doggett, 505 U.S. at 657, 112 S. Ct. at 2693; see Shaw, 117
S.W.3d at 890. However, this presumption is negated by the defendant’s failure to
assert his speedy trial right. See id. 
          First, appellant has been incarcerated on an unrelated offense since before the
incident in question. Although appellant would have been incarcerated regardless of
the crime involved in this case, some consideration needs to be given to any possible
“oppressive pre-trial incarceration.” Smith v. Hooey, 393 U.S. 374, 378, 89 S. Ct.
575, 577 (1969). However, in this case there is no evidence that appellant suffered
any oppressive pre-trial incarceration. Appellant was already serving in the
administrative segregation unit before the incident and thus could not have had his
prison activities restricted any further. Second, there is no evidence that appellant
suffered from any mental anxiety due to the 39-month delay. Thus, appellant has not
shown prejudice based on the first two interests. 
          Appellant further alleges that his defense was impaired due to the loss of four
potential witnesses. Appellant listed these witnesses in a sworn affidavit filed by his
trial attorney. This list includes (1) Danny Garcia, who died in February 2005 and
who told investigators that he had heard one of the alleged victims tell appellant that
he (the victim) would “get him a case for chunking on him”; (2) Isodro Salinas, who
died in December 2006 and who told investigators that appellant had never had any
problems with either victim; (3) Roberto Gonzales, who told investigators that he had
seen appellant’s neighbor in cell 38 throw the feces on the two victims; and (4)
Roberto Aguirre, an inmate with a cell close to appellant’s at the time of the incident. 
Both Roberto Gonzales and Roberto Aguirre were still alive at the time of trial, but
neither could be located. 
           The loss of potential witnesses causes unquestionable prejudice to a defense. 
See Barker, 407 U.S. at 532, 92 S. Ct. at 2193. We must determine what level of
prejudice has occurred due to the loss of these four witnesses. For “some showing
of prejudice,” the appellant must demonstrate “that the witnesses are unavailable, that
their testimony might be material and relevant to his case, and that he has exercised
due diligence in his attempt to find them and produce them for trial.” Harris v. State,
489 S.W.2d 303, 308 (Tex. Crim. App. 1973).
          After a review of the record, the potential testimony of the two deceased
witnesses would likely not have been material or relevant. Danny Garcia told
investigators that one of the victims told appellant that he would get a chunking case
brought against him. However, the affidavit fails to specify which victim stated this
or when this occurred. It is possible that this statement was made after the incident,
in which case the statement would appear to be no more than a reasonable response
to appellant’s actions. Isodro Salinas told investigators that neither of the victims had
had any problems with appellant. This fact was testified to by both Williams and
appellant himself, thus making Salinas’s testimony repetitious and not material.           The loss of the two living witnesses causes us to look at the appellant’s
investigatory methods and whether he exercised due diligence. Roberto Aguirre was
housed in a cell close to that of appellant at the time of the incident. However, there
is no evidence provided by appellant as to what Aguirre would have testified. 
Furthermore, Aguirre was imprisoned for a full 10 months after appellant was
indicted. There is no evidence in the record that appellant attempted to investigate
Aguirre’s possible testimony during that time. 
          Roberto Gonzales would have testified that he witnessed the inmate in cell 38
throw the liquid onto the two victims. This testimony would no doubt have been
helpful to appellant. However, this witness did not show up on the day of trial,
despite being subpoenaed to do so. Appellant did not seek a continuance in order to
obtain the missing witness, which was a possible remedy available to him under
Texas Code of Criminal Procedure article 29.06, but instead moved to dismiss for the
lack of a speedy trial. See Tex. Code Crim. Proc. Ann. art. 29.06 (Vernon 2006). 
The loss of this witness was within appellant’s power to prevent. He could have
asked for a continuance and then sought to have Gonzales appear before the court on
his behalf. Appellant failed to take this action. It is difficult to see how the loss of
this witness prejudiced the defense when appellant failed to show due diligence by
taking the reasonable steps to ensure Gonzales’s presence at trial. Thus, we hold that
this factor weighs only slightly against the State. 
          5.       The Balancing Test
          After assigning weight to each, the factors must be balanced together. Shaw,
117 S.W.3d at 891. Tending slightly to favor a finding of a violation are each of the
factors of the 39-month delay, the absence of a valid reason for the delay, and the loss
of potential witnesses. Tending heavily against a finding of a violation is the
appellant’s failure to assert his speedy trial right. After balancing these factors, we
hold that appellant’s speedy trial right was not violated. Appellant’s failure to assert
his right to a speedy trial shows that he really did not want a speedy trial and that this
failure offsets any possible prejudice caused by the delay. See Barker, 407 U.S. at
534, 92 S. Ct. at 2194; see also Shaw, 117 S.W.3d at 890–91 (concluding that 29-month delay between indictment and defendant’s assertion of his right to speedy trial
showed that defendant did not really want speedy trial). 
          Therefore, we hold the trial court’s denial of appellant’s motion to dismiss for
lack of a speedy trial was not an abuse of discretion, and we overrule appellant’s first
point of error.
Extraneous Offense Evidence
          In points of error two and three, appellant contends that evidence offered at
trial of extraneous incidents of appellant’s “chunking” was admitted in error. 
Appellant argues that this evidence violated Texas Rule of Evidence 404(b) or,
alternatively, Texas Rule of Evidence 403. See Tex. R. Evid. 403, 404(b).
A.      Standard of Review
          In our review of the admissibility of evidence, we must apply an abuse-of-discretion standard. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App.
2000). An appellate court is required to uphold the trial court’s ruling as long as it
was within a “zone of reasonable disagreement.” Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1990) (op. on reh’g). An appellate court is also required
to review the trial court’s ruling in reference to what was before the trial court at the
time that the ruling was made. Hoyos v. State, 982 S.W.2d 419, 422 (Tex. Crim. App.
1998). 
B.      The Law 
          Rule 404(b) of the Texas Rules of Evidence provides:Evidence of other crimes, wrongs or acts is not admissible to prove the
character of a person in order to show action in conformity therewith. 
It may, however, be admissible for other purposes, such as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident, provided that upon timely request by the
accused in a criminal case, reasonable notice is given in advance of trial
of intent to introduce in the State’s case-in-chief such evidence other
than that arising in the same transaction. 

Tex. R. Evid. 404(b). Extraneous evidence that serves any of the purposes
enunciated above is relevant and admissible “beyond its tendency to prove the
character of a person to show that he acted in conformity therewith.” Montgomery,
810 S.W.2d at 391. 
          Rule 403 of the Texas Rules of Evidence provides:
Although relevant, evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of
the issues, or misleading the jury, or by considerations of undue delay,
or needless presentation of cumulative evidence. 
Tex. R. Evid. 403. The court is required to conduct a balancing test when faced with
a rule 403 objection. See Montgomery, 810 S.W.2d at 388. When evidence is
deemed to be relevant, it is presumed that its value outweighs any prejudicial effect. 
See id. at 389. It is then the burden of the opponent to show that the alleged unfair
prejudice substantially outweighs the probative value. See id. The court should also
consider four factors when conducting this balance. Wheeler v. State, 67 S.W.3d 879,
888 (Tex. Crim. App. 2002). These factors include (1) how compellingly evidence
of the extraneous offense serves to make a fact of consequence more or less probable;
(2) the extraneous offense’s potential to impress the jury in some irrational but
indelible way; (3) the trial time that the proponent will require to develop evidence
of the extraneous misconduct; and (4) the proponent’s need for the extraneous
transaction evidence. Id. 
C.      Application of Rule 404(b)
          At trial, evidence was admitted that appellant had “chunked” four times on
three other inmates and had threatened to “chunk” on a correctional officer. These
incidents were presented during the cross-examination of appellant and in the State’s
rebuttal. Each incident occurred under similar circumstances. All occurred in front
of appellant’s cell, and each of the victims had liquid fecal matter thrown on him. 
The trial court allowed this evidence to show intent, motive, scheme, and design and
to refute a defensive theory. 
          The State argued in its closing statement that appellant had a motive to stay in
administrative segregation or to be moved to another prison population and that these
extraneous incidents showed that he had a similar plan or scheme to carry out that
motive. Each of these extraneous offenses had involved appellant’s throwing bodily
fluids on other inmates, and the State offered these facts as a basis for appellant’s
motive to stay in administrative segregation. The trial court was made aware that any
“bad acts” committed by an inmate would result in a set amount of time spent in
administrative segregation. During the admissibility hearing, appellant himself told
the trial court that he had repeatedly (six or seven times) asked to be transferred to a
different unit or population. We observe that, in the absence of a transfer to a
different unit, the only way that appellant cold avoid the population in this unit was
to spend time in administrative segregation.
          The trial court was also aware that appellant denied committing the incident in
question and instead implicated his neighbor as the one who had thrown the liquid. 
This defensive theory was offered by appellant himself during direct examination. 
The State requested that the extraneous evidence be used to refute this defensive
theory. The trial court referenced refuting a defensive theory when making its
limiting instruction to the jury. 
          Applying the abuse-of-discretion standard, we hold that the admissibility of the
evidence does not fall outside “the zone of reasonable disagreement.” See
Montgomery, 810 S.W.2d at 391. Motive evidence must “fairly tend to raise an
inference in favor of the existence of a motive on the part of the accused to commit
the alleged offense for which he is on trial.” Rodriguez v. State, 486 S.W.2d 355, 358
(Tex. Crim. App. 1972). Rebuttal of a defensive theory is also a permissible use of
evidence offered under rule 404(b). Moses v. State, 105 S.W.3d 622, 626 (Tex. Crim.
App. 2003) (allowing evidence to refute defendant’s assertion that charges against
him were false and in retaliation for past occurrence with police officers). 
          At the time that the trial court made its ruling, it was aware of the information
above and was aware, generally, of the extraneous testimony that would be presented. 
It was not unreasonable for the trial court to rule that these extraneous offenses, all
occurring under almost the same type of facts as those of the charged offense, did
tend to show a motive on the part of appellant to stay in administrative segregation
and that he had a repetitive scheme to carry out that motive. It was also not
unreasonable for the trial court to admit the evidence on the ground that it refuted the
defensive theory that another inmate had thrown the liquid. See id. 
          Therefore, we overrule appellant’s second point of error. 
D.      Application of Rule 403 
          Appellant alternatively argues that the extraneous evidence should be held to
be inadmissible under rule 403. As stated above, the trial court considers the
evidence in light of four factors: (1) how compellingly evidence of the extraneous
offense serves to make a fact of consequence more or less probable; (2) the
extraneous offense’s potential to impress the jury in some irrational but indelible way;
(3) the trial time that the proponent will require to develop evidence of the extraneous
misconduct; and (4) the proponent’s need for the extraneous transaction evidence. 
Wheeler, 67 S.W.3d at 888. 
          Under the first factor, the trial court reasonably have recognized that the
extraneous evidence did tend to show a scheme or plan and a motive on the part of
appellant to throw bodily fluids on people in order to stay in administrative
segregation. This fact tended to show that the evidence was compelling and that the
State had demonstrated a need to use it. Second, the trial court limited the number
of incidents that the State could use to “four or five,” as opposed to the 18 that the
State had sought to use. Testimony was admitted only as to four incidents against
three inmates and a fifth threatened incident. This step limited the time needed to
present this evidence to four rebuttal witnesses. Finally, the trial court gave the jury
a limiting instruction, mandating that they use the extraneous evidence only for the
purposes of showing motive, scheme, or plan or for refuting a defensive theory. 
Thus, the trial court took steps to ensure that the evidence would not impress the jury
in some irrational or impermissible way. 
          The trial court had previously concluded that the extraneous incidents were
relevant and probative to show appellant’s motive, scheme, or plan and to refute a
defensive theory. Thus, it was appellant’s burden to show that the unfair prejudicial
effect of these incidents substantially outweighed the probative value. See
Montgomery, 810 S.W.3d at 888. 
          Balancing the probative value against any unfair prejudicial effect, we hold that
it was not an abuse of discretion for the trial court to admit the extraneous evidence. 
The court ruled that the incidents were probative and took limiting actions to prevent
impermissible uses by the jury. 
          Therefore, we overrule appellant’s third point of error. Conclusion
          We affirm the judgment of the trial court.
 
                                                                        


                                                                        Tim Taft
Justice
 
Panel consists of Justices Taft, Keyes, and Alcala.
Do not publish. Tex. R. App. P. 47.2(b).