**Reversed and Remanded and Memorandum Opinion filed December 29, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00024-CR

---

**THE STATE OF TEXAS, Appellant**

**V.**

**CHRISTOPHER LEON JACKSON, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 8**
**Harris County, Texas**
**Trial Court Cause No. 2326945**

---

### MEMORANDUM OPINION

The State of Texas appeals the trial court's dismissal of charges against appellee, Christopher Leon Jackson, on speedy trial grounds. In one issue the State argues that the trial court erred in granting appellee's motion to dismiss. We reverse and remand for further proceedings.

## I. BACKGROUND

On September 23, 2018, appellee was charged with driving while intoxicated (DWI). Appellee posted bond the following day. The case was set

twice for jury trial, once in November 2019 and again in January 2020, the November trial setting was continued by the trial court. During its pendency, the case was set and reset as follows:

| Setting Date | Reset Date | Event and Requestor | Days |
|---|---|---|---|
| 09/23/2018 | | Appellee arrested; information and complaint filed | |
| 09/28/2018 | 11/05/2018 | Unassigned reset | |
| 11/05/2018 | 01/09/2019 | Unassigned reset | |
| 01/09/2019 | 02/27/2019 | **Appellee's Request** | **39** |
| 02/27/2019 | 04/19/2019 | | |
| 04/19/2019 | 05/23/2019 | | |
| 05/23/2019 | 07/18/2019 | State's Request | |
| 07/18/2019 | 09/04/2019 | **Appellee's Request** | **48** |
| 09/04/2019 | | Set Jury Trial for 11/04/2019 | |
| 11/04/2019 | 01/28/2020 | Reset Jury Trial for 1/28/2020; **by trial court** | **85** |
| 01/23/2020 | | Motion to continue—missing witness; State's request | |
| 1/24/2020 | | Motion to Dismiss & case dismissed; State's request | |

In January 2020, the State filed a motion for continuance because one of its witnesses was unavailable for the trial setting. The trial court verbally denied the continuance. The State then moved to dismiss the case subject to re-filing. The trial court granted the dismissal. The State re-filed the case on September 21, 2020, following a grand jury indictment. On November 11, 2020, appellee filed a motion to dismiss for violation of his right to a speedy trial. On December 3,

2020, the trial court held hearings on appellee's motion to dismiss over three days in December 2020.

At the hearings on appellee's motion, appellee argued that he was prejudiced by the State's delay in re-filing the case during the COVID-19 pandemic because of the "serious negative health effect of" COVID-19, its "disproportionately affecting the African-American community" and that because appellee is African-American appellee is not "going to have a fair cross section of the community as even an option in a jury pool."

The State introduced the trial court's reset forms into evidence, showing the resets that took place from September 2018 to January 2020, as well as an affidavit of the district attorney that had been working on the case up to its January 2020 dismissal. The State argued that most of the resets were for "the normal collection of evidence, speaking about the trial, discussing possible resolution and then the eventual setting of the . . . November . . . trial setting which then got reset to the 28th of January, 2020." The State further argued that none of the delays were caused by the State's bad acts or negligence but instead show due diligence to collect evidence. The State asserted that it filed a motion for continuance of the January 2020 trial setting due to the unavailability of a witness which was "verbally denied." As a result of the verbal denial, the State requested dismissal.

After the last hearing on appellee's motion the trial court made oral findings and conclusions. The trial court found:

- that the State "provided no evidence to explain the delay between January and when this was filed two days before the statute of limitations was to expire;

- "[N]o explanation about why it took so long and what was happening during that time and certainly is a very critical time because . . . the case would

3

have been tried within, probably within days or weeks of the January trial setting."

- "[T]hey insisted that because their witness was getting married, not even on the day of trial, but like within one or two weeks of the trial and was anxious about it that he couldn't testify in a case which I find to be an outrageous excuse for a witness."

- The reason the case wasn't tried in January . . . is flatly unacceptable.

- "[T]here were some more kind of pedestrian normal course of business delays earlier in the trial, sure, but the real critical delay comes at the end when the State is coming back and delaying the trial."

- "[T]he Defense repeatedly urged the Court to take the case to trial, which the Court accepts as an assertion of the right to a speedy trial. . . . all we talked about was how quickly we can get it to trial."

- "I've looked at the checked boxes on the resets and they even largely comport with my recollection even though they are not the most accurate."

- "[T]he defendant has adequately asserted his right and I find that he suffered prejudice . . . the delay has caused him now to be in a world where we have extremely limited juries."

The trial court granted appellee's motion and dismissed the case.

## II.    SPEEDY TRIAL GUARANTEE

The State argues that the trial court erred in dismissing the case against appellee for violation of his right to speedy trial.

4

## A.    General Legal Principles

"The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution the right to a speedy trial." *State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021). The Texas Constitution provides the same guarantee. Tex. Const. art. 1, § 10. A court should consider the four *Barker* factors in addressing a speedy-trial claim: (1) the length of delay, (2) the State's reason for delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of the delay. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also Lopez*, 631 S.W.3d at 113; *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016). Generally, courts deem delays approaching one year as unreasonable enough to trigger further inquiry. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

"We apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a *de novo* standard for the legal components." *Lopez*, 631 S.W.3d at 113–14. Evaluation of the *Barker* factors involves both fact determinations and legal conclusions, but the balancing test is a purely legal question that we review de novo. *Id.* at 114; *Balderas*, 517 S.W.3d at 767–68. We give almost total deference to the trial court's historical fact findings that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings. *Balderas*, 517 S.W.3d at 767–68.

## B.    Analysis

### 1.  Length of Delay

Presumptive prejudice marks the point at which courts deem the delay unreasonable enough to trigger further inquiry. *State v. Munoz*, 991 S.W.2d 818, 821–22 (Tex. Crim. App. 1999). There is no set time that triggers the analysis of the other remaining *Barker* factors, but instead is dependent upon the particular

circumstances of the case. *See Lopez*, 631 S.W.3d at 114. "Such circumstances include the nature of the charged offense, and whether the defendant can make bail or must await trial while confined in jail" as well as the complexity of the case. *Id*. Generally, a delay of eight months to a year is presumptively prejudicial and triggers a speedy trial analysis. *Id*.; *see also Balderas*, 517 S.W.3d at 768 ("In general, courts deem delay approaching one year to be 'unreasonable enough to trigger the *Barker* enquiry.'" (quoting *Dragoo*, 96 S.W.3d at 314)).

The State argues that the total delay in this case is a "sum of nearly thirteen months" but does not concede that a full *Barker* analysis is required. However, the State argues that if a full *Barker* analysis is required, then the length of the delay should weigh "only slightly" against the State. Appellee argues that the length of time of the delay is sufficient to trigger a full *Barker* analysis.

From September 23, 2018—the day appellee was charged and arrested for driving while intoxicated, to the day that the State dismissed the case on January 24, 2020, was a period of 488 days. Excluding the two requests from appellee to reset hearings, the total number of days goes from 488 to 401 days, or approximately thirteen months. *See Celestine v. State*, 356 S.W. 502, 507 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("[T]ime covered by agreed resets is to be excluded from speedy trial consideration."). Neither party has alleged that this DWI case is complex. This delay is sufficient to trigger a full *Barker* analysis. *See Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) ("In general, delay approaching one year is sufficient to trigger a speedy trial inquiry."); *Dragoo*, 96 S.W.3d at 314 (delay approaching one year sufficient to trigger full *Barker* analysis).

6

Considering the total amount of time from the arrest on September 23, 2018 to appellee's motion to dismiss on November 11, 2020,[1] the total is 780 days. Even subtracting the appellee's requested resets (totaling 87 days), the total is 693 days or just under twenty-three months.

We conclude that this factor weighs against the State, but not heavily. *See Voda*, 545 S.W.3d at 741–42 (thirty-two-month delay in DWI case weighed against the State, but not heavily).

## 2. Reason for the Delay

The State has the burden to justify the delay. *Cantu*, 253 S.W.3d at 280. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531. A valid reason, such as a missing witness or good faith plea negotiations, should serve to justify appropriate delay. *See id.*; *State v. Munoz*, 991 S.W.2d 818, 824 (Tex. Crim. App. 1999). When the State fails to establish a reason for the delay, we may presume neither a deliberate attempt to prejudice the defense nor a valid reason for the delay. *Dragoo*, 96 S.W.3d at 314; *State v. Wei*, 447 S.W.3d 549, 544 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

Here, the State contended that from September 2018 to January 2020 the case was being worked-up normally to collect evidence, discuss trial and possible resolution, and that there were some discovery considerations. This evidence was not controverted by appellee and the trial court found that "there were some more kind of pedestrian normal course of business delays earlier in the [case]." Valid

---

[1] *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (en banc) ("The length of the delay between an initial charge and trial (or the defendant's demand for a speedy trial) acts as a 'triggering mechanism.'").

reasons for delays are not weighed against the State.  *See Balderas*, 517 S.W.3d at 768; *Shaw*, 117 S.W.3d at 889–90; *see also Hopper v. State*, 495 S.W.3d 468, 474 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 520 S.W.3d 915 (Tex. Crim. App. 2017).

The State also presented evidence that one of its fact witnesses was unable to attend the January 2020 trial setting.  The State requested a continuance which was denied, informally, by the trial court.[2]  The State then filed a dismissal of the case.  The trial court concluded that the stated reason for the witness's inability to attend the trial was "outrageous" and that the "reason the case wasn't tried in January . . . is flat unacceptable."  However, there is no evidence in the record of a deliberate attempt by the State to prejudice appellee.  The trial court rejected the State's explanation for the delay but there is no evidence of bad faith conduct or a deliberate attempt by the State to prejudice appellee.  Thus, this period weighs against the State, but not heavily.

The trial court further found that the State "provided no evidence to explain the delay between January and when [the case was re-]filed two days before the statute of limitations was to expire."  Without an explanation, this period also weighs against the State, but not heavily.

Appellee argues that the trial court "found" that the delay was bad faith on the part of the State.  However, there is no such finding in the record.  The trial court was skeptical regarding the proffered excuse of the witness, considering the excuse to be "outrageous."  However, there is no finding or conclusion that the State acted in bad faith or that the State was deliberately trying to prejudice appellee.  A bad excuse is not the same as acting in bad faith or a deliberate

---

[2] At the hearing on appellee's motion to dismiss the trial court confirmed that at an in-chambers conference with the parties he indicated he would not grant the continuance.

8

attempt to prejudice appellee. *See Ex pate Napper*, 322 S.W.3d 202, 231–232 (Tex. Crim. App. 2010) (examining meaning of "bad faith" in context of destruction of evidence potentially useful to the defense, stating "bad faith entails some improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful.").

A period of 401 days attributable to the State during which the case was initially pending, the trial court concluded was "normal course of business" for discovery purposes and is not weighed against the State. A period of 292 days between the dismissal requested by the State and appellee filing his motion to dismiss weighs against the State, but not heavily.

### 3. Assertion of the Right

When a defendant does not ask for a speedy trial, and instead only asks for dismissal, it is incumbent upon the defendant to show some attempt to get the case into court so that trial could occur in a speedy manner. *Cantu*, 253 S.W.3d at 284. An accused who has been arrested but not formally charged has a choice:

> [H]e can wait until he is charged, then file a motion for a speedy trial, and, if this request is not honored, he can then file a motion to dismiss because he diligently sought what he was entitled to—a speedy trial. Or, he can wait until he is charged and simply file a motion to dismiss if he can show that he diligently tried to move the case into court before formal charges were filed.

*Id*. at 284–85. In *Cantu*, the defendant never sought or requested a speedy trial, only an outright dismissal and tried to prove that he acted on the desire for a speedy resolution before he was charged. *Id*. at 285.

The State argues that the trial court impermissibly made a finding that appellee had "repeatedly" asserted his right to speedy trial based on the trial court's recollection of events during the case and that there is no record evidence to

support this finding. The State asserts that the record and evidence show that appellee acquiesced and even requested some of the delay and this is inconsistent with the trial court's finding.

The trial court found that "the Defense repeatedly urged the Court to take the case to trial, which the Court accepts as an assertion of the right to a speedy trial." However, there is no indication in the record of appellee's assertions. The record shows that appellee requested two resets. Appellee did not even argue in his motion or to the trial court at the hearing that he asserted his right to speedy trial and sought trial of this case, and provided no indication of how he did so. There was no objection filed by appellee to the State's motion for continuance. *See Barker*, 407 U.S. 534–35 (noting defendant's lack of action in response to prosecution's motions for continuance). Appellee did not object to the State's motion to dismiss arguing that he was ready for trial and urging the trial to go forward. Appellee did not file a speedy trial motion requesting that trial be set. Without record support, we need not give deference to this fact finding. *See State v. Davis*, 549 S.W.3d 688, 704–07 (Tex. App.—Austin 2017, no pet.) (disregarding trial court's finding that defendant had asserted his right where evidence presented and record only supported conclusion that defendant's assertion was "ambiguous at best"); *see also Balderas*, 517 S.W.3d at 768. Here, like in *Cantu*, there was no showing or evidence that appellee ever sought or requested a speedy trial. Once the case was re-filed, appellee sought an outright dismissal without attempting to show that he acted on the desire for a speedy resolution. *See Barker*, 407 U.S. at 532 (emphasizing that a defendant's failure to assert his right to a speedy trial "will make it more difficult for a defendant to prove that he was denied a speedy trial"); *Cantu*, 253 S.W.3d at 283 ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one."); *Munoz*, 991 S.W.2d at 826

(concluding inaction dispositive of the "assertion of the right" *Barker* factor when nothing moved for or filed prior to defendant's motion to dismiss the indictment expressly reflected an assertion of defendant's speedy trial right). Even taking as true appellant's assertion that he was ready for trial in January 2020, this is not the same as asserting or demanding trial. *See Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013) (announcing ready for trial was not a demand for trial, instead "it merely asserts that he could go to trial at that moment should the State push for it").

We conclude this factor weighs against appellee.

### 4. Prejudice

"Prejudice . . . should be assessed in the light of the interest of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. "This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*.; *see also Cantu*, 253 S.W.2d at 285. Of these, the last is the most serious because the defendant's inability to prepare his case skews the fairness of the entire system. *Id*. "[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett v. United States*, 505 U.S. 647, 655 (1992).

The State argues that the trial court erred in failing to assess prejudice to appellee caused by the delay and instead engaged in speculation of harm that "functionally hung the millstone of COVID around the State's neck." The State further argues that there is no "nexus" between the delay and the prejudice caused.

In this case appellee argued that "instead of having a normal jury pool available to hear the case, we are in this odd purgatory of which there is really not

11

a modern precedence for." Appellee then went on to argue that the COVID-19 pandemic prejudiced appellee because of the "serious negative health effect of" COVID-19, its "disproportionately affecting the African-American community" and that because appellee is African-American appellee is not "going to have a fair cross section of the community as even an option in a jury pool." Appellee argued that because of the pandemic that he was also unable to effectively communicate with his attorney due to mask and distancing requirements and that such precautionary measures "severely and significantly hampered" counsel's ability to effectively represent appellee. The trial court concluded that appellee "suffered prejudice . . . the delay has caused him now to be in a world where we have extremely limited juries."

We agree with the State regarding the types of prejudices that the right to speedy trial is designed to protect against and that the delay here did not cause the prejudice that appellee asserts. The alleged prejudice of defending criminal prosecution during a global pandemic is felt equally by all defendants as opposed to only those alleging a speedy trial violation and is, thus, not caused by the delay itself. Put another way, had appellee allegedly committed a crime in September 2020 and been charged at that time, he would still suffer all of the same alleged prejudice yet none of the delay, demonstrating that the asserted prejudice here was not caused by the delay.

The types of prejudice that the right to speedy trial was designed to protect are foreseeable consequences to delay—missing witnesses, fading memories, destruction of evidence, increased anxiety and concern over pending prosecution, public scorn, loss of employment or employment opportunities, disruption of family life, inability to engage in political speech, chilled speech, idleness, potential hinderance on ability to collect evidence or contact witnesses, and

12

oppressive pretrial incarceration. *See Barker*, 407 U.S. at 532 (listing prejudices a defendant might experience due to delay).

Prejudice due to delay is obvious when a witness dies or disappears during the delay, or if a witness is unable to recall the events at issue. *Barker*, 407 U.S. at 532. "Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." *Id.* Appellee makes no assertion that any witness has died, disappeared, or has since become unable to accurately recall the events at issue. Appellee has made no assertion of oppressive pre-trial incarceration or any increased anxiety or concern that is affecting his daily life. Appellee has not asserted any of the types of potential prejudices listed above that may be caused by a delay in trying the case.

Instead, appellee speculates, without presenting any evidence, that the COVID-19 pandemic will make any trial inherently unfair. We decline to engage in such speculation. *See Voda v. State*, 545 S.W.3d 734, 744 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (declining to engage in speculation regarding alleged prejudice). While we do not discount the effect the COVID-19 pandemic has had on the judicial process, there are other constitutional protections in place to ensure that any proceedings conducted during this pandemic are fair to the accused.[3] Further, appellee is not relieved of his burden to demonstrate with evidence, as opposed to mere allegations, that some prejudice actually exists.

---

[3] For instance, should appellee be denied a jury drawn from a fair cross section of the community he could object and raise his constitutional right to such a jury at that time. *See Aldrich v. State*, 928 S.W.2d 558, 560 (Tex. Crim. App. 1996) (en banc) ("A defendant may establish violation of the fair-cross-section requirement by demonstrating that: . . . the group *was not fairly represented on the jury panel from which the petit jury was chosen* . . . ." (emphasis added)); *Pondexter v. State*, 942 S.W.3d 577, 581 (Tex. Crim. App. 1996) ("There was no evidence introduced by appellant that showed that the difference between the percentage of African-Americans in the county and the percentage on the jury panel was in fact not fair and reasonable.").

Appellee asserts that his case would have been tried in January 2020, prior to the COVID-19 pandemic, absent the State's bad faith dismissal. The trial court agreed that the case would have been tried in January, or within a few days or weeks of the January trial setting had the State not dismissed the case. However, as mentioned above, there is no evidence and no finding that the State acted in bad faith in dismissing the case in January. Appellee agreed at the hearing that he did not think that the State had done anything improper. The trial court, in its discretion, granted the dismissal in January instead of denying it. *See Graham v. State*, 994 S.W.2d 651, 654 (Tex. Crim. App. 1999) ("The county attorney or district attorney . . . has the authority to dismiss a prosecution, but only with the approval of the court."); *Hughes v. State*, 16 S.W.3d 429 (Tex. App.—Waco 2000, no pet.) ("It is well settled that the dismissal of a cause does not prevent the grand jury from returning a subsequent indictment charging the same transaction.").

Lastly, appellee argues that the State did not argue to the trial court that the prejudice he alleged was not the type of prejudice the right to a speedy trial was designed to diminish or that his prejudice was caused by the delay and has therefore waived this argument. We disagree that the argument is waived. At the hearing the State argued that:

> [F]or the prejudice that the Defense has listed in his motion, all of it is what the pandemic, how the pandemic is going to prejudice the defendant currently for trial. None of the argument made by the defendant in his motion and right now has shown how the prejudice, how the delay has prejudiced the defendant.
>
> . . . . It is not my position to diminish the pandemic . . . but as the case law has stated, there are specific rights that the speedy trial sets to protect . . .
>
> . . .
>
> . . . . I don't believe the Defense did his argument or the motion has brought up prejudice that courts have acknowledged in weighing all

the factors together.

Appellee's assertion of prejudice at the trial court was not the type of prejudice that the right to speedy trial was designed to prevent. Appellee presented no evidence of any prejudice, and instead presented only arguments that he believed he would not have a fair jury or a fair trial. The delay in this case was also not so lengthy so as to be presumptively prejudicial, and appellee does not argue that it is. *See Voda*, 545 S.W.3d at 744 (DWI pending for thirty-two months not "presumptively prejudicial"). The record does not show that appellant's ability to defend himself was prejudiced by the delay. *See id*. (no prejudice shown when defendant only alleged that a witness could not be located).

This factor weighs heavily against appellee.

### 5. Balancing

We must balance the *Barker* factors "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Balderas*, 517 S.W.3d at 773.

Here, while there were delays, there is no evidence of any bad faith on the part of the State. The length of delay and reason for the delay factors do not weigh heavily against the State. Appellee did not argue or present evidence that he asserted his right to a speedy trial or that he tried to get the case to trial. Instead, appellee's first motion was to dismiss the case. This factor weighs against appellee. Finally, appellee did not show any prejudice caused by the delay and the delay itself is not presumptively prejudicial. This factor weighs heavily against appellee.

This is not a case where the delay stretched "well beyond the bare minimum needed to trigger judicial examination of the claim," and therefore weighed heavily

15

against the State. *See Voda*, 545 S.W.3d at 741–42 (thirty-two-month delay in DWI case weighed against the State, but not heavily). The length of delay was not one that was so excessive that it presumptively compromised the reliability of the trial. *See Shaw*, 117 S.W.3d at 890. Further, the record did not show that appellee clearly asserted his right or made some showing of prejudice. *See Barker*, 407 U.S. at 532. We conclude that the *Barker* factors balanced together weigh against a determination that appellee was denied his right to a speedy trial. *See Balderas*, 517 S.W.3d at 773; *Davis*, 549 S.W.3d at 710. We sustain the State's issue.

## III. CONCLUSION

We reverse the trial court's order of dismissal and remand the case to the trial court for further proceedings.

/s/ Ken Wise
   Justice

Panel consists of Justices Wise, Spain, and Hassan. (Spain, J., and Hassan, J., concurring without opinion).

Do Not Publish — TEX. R. APP. P. 47.2(b).