# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00038-CR

---

**The State of Texas, Appellant**

**v.**

**Angel Del Hoyo, Appellee**

---

### FROM THE 22ND DISTRICT COURT OF COMAL COUNTY
### NO. CR2019-524A, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The State appeals from the trial court's orders granting Angel Del Hoyo's Motion to Dismiss for Denial of Speedy Trial. We affirm.

## BACKGROUND

On June 5, 2019, a grand jury indicted Angel Del Hoyo in three indictments charging thirteen third-degree felony counts of online impersonation and/or stalking. Tex. Penal Code §§ 33.07(a), (c), 42.072(a)(3)(A), (b). These provided, in part, as follows:

- First Indictment (CR2019-524A): eight counts of online impersonation (alleging the creation of eight Instagram accounts with intent to harm, intimidate or threaten) and one count of stalking (alleging the creation of an Instagram account and posting to it—conduct that the actor knows or reasonably should know the other person will regard as threatening bodily injury or death)—all committed against M.R.-1.

- Second Indictment: (CR2019-525A): one count of online impersonation (alleging the creation of an Instagram account with intent to harm, intimidate or threaten) and one count

of stalking (alleging the creation of an Instagram account and posting to it—conduct that the actor knows or reasonably should know the other person will regard as threatening bodily injury or death)—both committed against A.R.

- Third Indictment: (CR2019-526A): two counts of online impersonation (alleging the creation of two Instagram accounts with intent to harm, intimidate, or threaten) committed against M.R.-2.

The record reflects Del Hoyo had just turned 17 years old when he allegedly committed the online impersonation and stalking conduct. Over the next several years, Dr. Marisa Mauro examined Del Hoyo for competency and sanity; there were several resets at Del Hoyo's behest; and felony jury trials in Comal County ground to a halt due to the Covid-19 pandemic.

On July 6, 2023, a grand jury reindicted the stalking counts, changing the means and adding a complainant. Tex. Penal Code § 42.072(a),(b). These provided, in part, as follows:

- Fourth Indictment (CR2023-486A): one count of stalking committed against M.R.-1 or T.R. (alleging underlying harassment under Tex. Penal Code § 42.07(a)(8), publishing repeated electronic communications in a manner to likely cause emotional distress, abuse, or torment to another person).

- Fifth Indictment (CR2023-487A): one count of stalking—committed against A.V. (alleging underlying harassment under Tex. Penal Code § 42.07(a)(8), publishing repeated electronic communications in a manner to likely cause emotional distress, abuse, or torment to another person).

These indictments did not contain the language naming the Instagram accounts and postings as had the stalking counts in the initial indictments. A series of motions, responses, orders, and findings of facts followed:

10/27/23    Del Hoyo filed motions to quash the indictments on several grounds—one of which was that Tex. Penal Code 42.07(a)(8) did not exist at the time Del Hoyo allegedly committed the offenses.[1]

---

[1] In 2021, the Texas Legislature added to Section 42.07(a) another means of committing harassment: "A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment,

| | |
|---|---|
| 02/27/24 | Del Hoyo filed motions to dismiss for denial of speedy trial—noting five years had passed since he had been arrested. |
| 06/17/24 | The State filed amended fourth and fifth indictments, adding back in language from the original indictments naming the Instagram accounts and postings and alleging underlying harassment under Tex. Penal Code § 42.07(a)(7), sending repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. |
| 06/19/24 | The State filed responses to the motions to quash and motions for leave to amend the indictments as set out above. |
| 07/02/24 | The trial court denied the motions to quash. |
| 12/30/24 | The trial court granted the motions to dismiss the indictments for denial of speedy trial. |
| 01/14/25 | The State filed a motion for reconsideration of the dismissals and request for findings and conclusions. |
| 01/15/25 | The State filed a motion for reconsideration—supplemental. |
| 01/17/25 | The State filed its notice of appeal. |
| 01/22/25 | The State again requested findings and conclusions, filing proposed findings and conclusions. |
| 02/07/25 | The trial court signed an order purporting to rescind its order of dismissal, without prejudice, and setting the case for a hearing in light of the State's additional records and case law in its filings. |
| 02/10/25 | The State filed, in this Court, an Emergency Motion to Abate & Remand the case to allow the trial court to sign a new order on February 13, 2025. This Court denied the motion. |
| 02/13/25 | The trial court signed findings and conclusions (totaling 25 pages) setting out the delays in the case and concluding that all four *Barker* factors |

or embarrass another . . . the person publishes on an Internet website, including a social media platform, repeated electronic communications in a manner reasonably likely to cause emotional distress, abuse, or torment to another person, unless the communications are made in connection with a matter of public concern." Tex. Pen. Code § 42.07(a)(8); Act of May 12, 2021, 87th Leg., R.S., ch. 178, § 1, 2021 Tex. Gen. Laws 385, 385.

weighed heavily against Del Hoyo and "the speedy trial dismissals should not have been granted."

03/05/25     The State filed a motion to consolidate its five appeals.

03/29/25     This Court granted the State's motion and consolidated its appeals.

The State appeals the dismissals of the indictments, emphasizing the trial court's late-filed findings and conclusions. Del Hoyo did not file a responsive brief.

## ANALYSIS

*Applicable Law and Standard of Review*

"The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a speedy trial to an accused." *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). The Supreme Court has listed four factors that courts should consider in addressing speedy-trial claims: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "If the defendant can make a threshold showing that the interval between accusation and trial is 'presumptively prejudicial,' then a court must consider each of the remaining *Barker* factors and weigh them." *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016). In reviewing the trial court's decision on Del Hoyo's federal constitutional speedy trial claim, we apply a bifurcated standard of review—an "abuse of discretion" standard for the factual components and a "de novo" standard for the legal components of the trial court's decision. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). "Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question that we review de novo." *Balderas*, 517 S.W.3d at 768.

4

*Application*

**The trial court lacked plenary power to rescind its dismissal orders.**

Before turning to the merits, we note that both the trial court's February 7, 2025 order, purporting to rescind its dismissals, and the February 13, 2025 findings and conclusions, which were inconsistent with the dismissals, were signed when it lacked plenary power—that is, when it lacked the power to change its dispositions over the causes. *See* POWER, Black's Law Dictionary (12th ed. 2024) (defining "plenary power" as a court's power to dispose of any matter properly before it).

While a trial court's plenary power can be extended by filing a motion for new trial or motion in arrest of judgment, Rules 21 and 22 limit the filings of those motions in criminal cases to defendants. Tex. R. App. P. 21.1 (new trial means rehearing on defendant's motion); Tex. R. App. P. 22.1 (motion in arrest of judgment means defendant's suggestion that, for reasons stated in motion, judgment rendered against defendant was contrary to law). *See State v. Aguilera*, 165 S.W.3d 695, 697–98 (Tex. Crim. App. 2005) ("At a minimum, a trial court retains plenary power to modify its sentence if a motion for new trial or motion in arrest of judgment is filed within 30 days of sentencing."). Such plenary-power-extending motions cannot be filed by the State; nor may a trial court grant a new trial on its own motion. *State v. Gant*, 709 S.W.3d 707, 713 (Tex. App.—Austin 2025, pet. ref'd); *State v. Carson,* 13 S.W.3d 811, 812 (Tex. App.—Fort Worth 2000, no pet.).

Because, at the time the trial court signed the inconsistent-with-the-dismissals order and findings and conclusions, the plenary power of the trial court in those cause numbers was

5

exhausted, we do not consider either document in reviewing the merits of this case;[2] instead, and because the State lost in the trial court, we must presume the trial court resolved any disputed fact issues in Del Hoya's favor, and we must also defer to the implied findings of fact that the record supports. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002); *Munoz*, 991 S.W.2d at 821.

**First factor: the length of delay.**

The length of delay is measured from the time an accused is arrested or indicted until he demands a speedy trial or is tried. *Zamorano*, 84 S.W.3d at 648. Courts find delays approaching one year to be unreasonable enough to trigger the *Barker* enquiry. *Balderas*, 517 S.W.3d at 768. In this case, Del Hoyo was originally arrested on December 18, 2018; he was rearrested on June 17, 2019 after the first three indictments were filed. He alleges he first asked for a speedy trial in the summer of 2023, when both sides were ready and the case was "passed over for a more serious case," and he filed a motion to dismiss for lack of a speedy trial on February 27, 2024—an interval of around four to five years. Such an interval stretches "far beyond the minimum needed to trigger the enquiry" and "weighs heavily in favor of finding a violation of the speedy trial right." *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003); *State v. Uhl*, 717 S.W.3d 117, 129 (Tex. App.—Austin 2025, pet. ref'd). In the middle of the speedy trial hearing the trial court acknowledged "we have delay." And we agree.

---

[2] Rule of Appellate Procedure 25.2(g) provides: "Once the record has been filed in the appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court receives the appellate-court mandate." Tex. R. App. P. 25.2(g). Here, the trial court retained the power to file findings and conclusions because the clerk's record had not yet been filed. *See Taylor v. State*, 163 S.W.3d 277, 279 (Tex. App.—Austin 2005, pet. dism'd) (filing of both clerk's and reporter's record deprives trial court of power to act further). It did not, however, retain the power to change its disposition.

6

The State argues that the real length of delay was only 197 days, not enough to trigger a speedy trial inquiry. Its math relies on what it sets out as the reasons for the delay that cannot be solely attributed to the State: 1896 – 513 (Covid) = 1383; 1383 – 627 (Del Hoyo's requests) = 765; 765 – 280 (agreed resets) = 476; 476 – 279 (also Del Hoyo's requests) = 197.

Courts generally do not consider the reasons for the delay under this first prong of the *Barker* test. *See*, *e.g.*, *Uhl*, 717 S.W.3d at 129; *Laird v. State*, 691 S.W.3d 30, 38 (Tex. App.—Austin 2023, pet. ref'd). And while the Court of Criminal Appeals has held, as the State notes in its calculations, that delay caused by good faith plea negotiations should not be weighed against the prosecution, it did so in the context of looking at the reasons for the delay. *Munoz*, 991 S.W.2d at 824. Again, because the delay stretched far beyond the minimum needed to trigger the additional inquiry, this factor weighs heavily in favor of finding a speedy-trial-right violation. *Dragoo*, 96 S.W.3d at 314; *Uhl*, 717 S.W.3d at 129. We turn to the remaining factors.

**Second factor: the State's reason for the delay.**

When a court assesses the second *Barker* factor—the State's reason for the delay—it assigns different weights to different reasons. *Balderas*, 517 S.W.3d at 768. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id*. "Delay caused by either the defendant or his counsel weighs against the defendant." *Balderas*, 517 S.W.3d at 768. "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531. "In the absence of an assigned reason

7

for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Dragoo*, 96 S.W.3d at 314.

At the November 18, 2024 hearing on the motion to dismiss, the trial court set out the setting schedule as reflected in its court coordinator's notes:

> THE COURT: Okay. Okay. What she has is: COVID, January through October of 2021; June 2022, Defense, ready, State, not ready; August 2022, both sides not ready; October 2022, Defense not ready, State, ready; February 2023, Defense not ready, no announcement from the State. [Here, the State interjected to say it was ready.] August 2023, both sides ready. Case not reached. October 2023, case not reached. March 2024, State ready, no announcement from the Defense written down. Case moved to evidentiary docket.

Del Hoyo acknowledged that some of the delays were due to Del Hoyo's need for competency and sanity evaluations, but argued some were due to the pandemic, and, although the State repeatedly announced ready, it did so on "indictments that were defective." "It wasn't until much later here that they tried to fix those after the deficiencies being pointed out." "So even though you may have some 'State's ready', it was not until much, much later in the game that they were actually ready after amending indictments." The State responded that, "indictment or not, we were ready." The State offered and the trial court admitted timeline exhibits.

First, the delays related to Del Hoyo's need for competency and sanity evaluations do not count against the State. *State v. Lopez*, 631 S.W.3d 107, 112 (Tex. Crim. App. 2021). Neither do Del Hoyo's continued attempts to get the prosecutors to offer pretrial diversion. *Munoz*, 991 S.W.2d at 824. Second, the delays related to the pandemic and the difficulty of getting a jury trial once the courts opened back up (the "cases not reached" docket entries) weigh against the State, though not heavily. *Barker*, 407 U.S. at 531; *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (delay attributable to crowded trial court docket weighs in favor of finding of

8

Sixth Amendment violation "although not heavily"); *Uhl*, 717 S.W.3d at 133 (delay caused by government shutdown weighed against State only slightly); *Laird*, 691 S.W.3d at 40 (same). Third, the delays related to the State's problems in drafting its original indictments also weigh against the State, but again not heavily. *See Barker*, 407 U.S. at 531; *Zamorano*, 84 S.W.3d at 651 (State's delay in providing interpreter constituted official negligence). Fourth, the delays related to the State's problems in the superseding stalking indictments asserting new theories not applicable to the case and an additional complainant also weigh against the State, though not heavily. *Barker*, 407 U.S. at 531 On balance, the reasons for the delay factor weigh against the State, though not heavily.

**Third factor: the defendant's assertion of his right to a speedy trial.**

A court must give the third *Barker* factor—the defendant's assertion of his right to a speedy trial—strong evidentiary weight in determining whether the defendant has been deprived of that right. *Balderas*, 517 S.W.3d at 771. "A defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want one." *Id*. Inaction weighs more heavily against a violation the longer the delay goes on. *Id*. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008).

Del Hoyo's actual motion was a dismissal motion, which weakens his speedy trial claim. *Id*. But reviewing the record, we have found the issue of the lack of speedy trial was brought up by Del Hoyo at several pretrial hearings and Del Hoyo repeatedly referred to an oral demand for a speedy trial (as opposed to a dismissal) made in the summer of 2023.

9

- 02/27/24    Del Hoyo informed the trial court he would be filing a motion to dismiss for denial of a speedy trial. That same day, Del Hoyo filed motions to dismiss for denial of speedy trial—noting five years had passed since he had been arrested.

- 05/21/24    Del Hoyo argued his motion to quash and motion to dismiss for lack of a speedy trial together. Del Hoyo set out the fact that the superseding indictments actually charged Del Hoyo for new crimes, crimes that did not exist at the time of the conduct (the allegation of the underlying harassment as Tex. Penal Code 42.07(a)(8)—publishing on an Internet website). "And that's why I filed the speedy trial motion. This is five years down the road, and it was—this was done by [the DA] herself. So the fact she would go—after four years, go indict him for a crime that didn't even exist at the time is the problem here, Judge." Del Hoyo argued that by doing so, "what it did is it stopped them from trying the cases in a timely fashion." At that hearing, Del Hoyo also called Dr. Mauro to testify about prejudice. The trial court did not have time to hear from the State its response to the speedy trial motion but the parties agreed that any additional delay would not count against the State. Del Hoyo also pointed out the deficiencies in the original stalking indictments, the failure to allege the repetitiveness of the underlying conduct, that it was committed "on more than one occasion." *See* Tex. Penal Code § 42.072(a).

- 06/03/24    Del Hoyo again addressed the speedy trial motion, noting that he had just heard the Court grant a motion in a previous case that was "not as old as this one." Del Hoyo stated, "Yes, Judge. I've argued for speedy trial and was passed over in a similar fashion. You heard this is a child with autism. He was 17 years old at the time. And this—I'm not—I'm not arguing the speedy trial motion. I'm just making a record of what I'm about to ask for, is you heard what he's been through since. This—there is something odd about this case where it's been treated, for this office, over heavily-handed. I've begged for a pretrial diversion in a case where this kid has not committed an offense before or after this, and I've been repeatedly denied by prosecutors in this room." At the same hearing, the State argued that "And had we really been talking about asserting a right, we would have already had this trial. It would have happened back at least . . . over a year ago now." Del Hoyo noted that "And since you weren't here, we did show up for a trial announcement where we were number one and begged for a trial. We got passed over for a more serious case." The prosecutor said, "I don't have any record of y'all ever asserting your right to a speedy trial." The trial court asked the defense attorney to "find that" in the record.

- 07/02/24    The trial court announced it would not grant the motion to quash and asked if there was anything else, to which Del Hoyo replied, "Need a speedy trial." The trial court stated, "That's really the gist of it is it not?" and asked "how come this case has not been prosecuted since 2017, when the original arrest was made?" The prosecutor stated that it was not prepared to argue the speedy trial issue; the setting had been to pick a trial date. The trial court asked Del Hoyo when he had made the original demand, and Del Hoyo responded: "I think about a year ago. We were number one and number two and got passed over, and I made the objection on the record." The trial court asked his coordinator to look at the records for Del Hoyo to check, and reset for another pretrial hearing to determine the speedy trial motion.

The next two settings were reset at Del Hoyo's request, and then, on November 18, 2024, the parties argued the speedy trial issue.

By our count, Del Hoyo filed the motion and raised the issue at least four times. *See Barker*, 407 U.S. at 529 (trial court can exercise discretion to "weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection"); *Cf.*, *State v. Beck*, 695 S.W.3d 729, 747 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (filing of motion unaccompanied by timely request for hearing or ruling indicates acquiescence in delay); *Huff v. State*, 467 S.W.3d 11, 29–30 (Tex. App.—San Antonio 2015, pet. ref'd) (lack of attempt to have claim heard weighs against finding a constitutional violation).

The State argues Del Hoyo only asked for a dismissal and never provided the record that showed the request he said he made at the 2023 settings where the case was passed over. But because Del Hoyo prevailed in the trial court, we must presume the trial court resolved any disputed fact issues in his favor. *See Zamorano*, 84 S.W.3d at 648; *Munoz*, 991 S.W.2d at 821. At the hearing on the dismissal motion, Del Hoyo represented again that he invoked the speedy trial right at a jury trial setting back in the "summer of last year." At a minimum, we find that Del Hoyo's announcements of ready for trial support the trial court's implied finding that Del Hoyo wanted a speedy trial. The State argues that even if arguendo Del Hoyo made that assertion of the right, "any such assertion was not genuine, particularly where the record is devoid of any follow-up assertions, requests, etc." But, given Del Hoyo's announcements of ready and his persistence in arguing the speedy trial issue, we find that this factor weighs in favor of Del Hoyo.

**Fourth Factor: prejudice to the defendant.**

The fourth *Barker* factor focuses on prejudice to the defendant related to the length of the delay. *Balderas*, 517 S.W.3d at 772. "To analyze prejudice, we consider three interests of defendants that the Speedy Trial Clause was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Id*. "The last interest is the most important because the fairness of the criminal-justice system is distorted when a defendant is unable to adequately prepare his defense." *Id*.

Initially, we note that Del Hoyo was not incarcerated, nor did he present evidence that a trial would be unfair because his defense would be impaired. Instead, at the May 21, 2024 hearing, Dr. Mauro testified concerning the second prejudice factor—the impact of the delay on the level of anxiety and concern of the accused. She said she had met with Del Hoyo, "in 2020, 2022, 2023, and 2024 for various referrals related to his pending criminal case, including competency, sanity, insanity, mitigation, and for this current proceeding related to speedy trial." She had diagnosed him with autism spectrum disorder; said he had a "developmental history of inflexible thinking and behavior" and "problems with social development and social cues, limited friendships, difficulty forming friendships, difficulty interpreting social cues from other people." She described him as non-violent and responsible with tasks but "youthful" and socially immature, "a little bit childlike." She said he has "had no other offenses, and "was, I believe, only 16 when this happened and now was about to turn 23." She said the delay had taken a significant toll on him:

- "It's been—it's been very challenging to him in terms of his functional capacity, his family relationships, his mental health, and his development."

12

- "Probably most importantly today, he—he's lost housing related to this. His family—his mother is—English is second language, and she's very limited there and has very little understanding of his mental health needs, his autism, and—and really, the legal case. So she's—she's become frustrated with him over time because he's not able to financially provide for himself."

- His mother had kicked him out of the house after he had called police on his sister's boyfriend for abusing his sister. He was temporarily living with his grandfather.

- Although he is bilingual, he hasn't been able to find employment with these pending felonies; "he has background checks done, and so—and then he's not able to get the jobs." He was unable to obtain a translation/interpretation services job at Ibex because of that. And, the restaurant jobs he had got he lost after he was rearrested on the new indictments and his bosses saw him on "Mugshots."

- "And now, I'm quite concerned with his safety, especially as a person with—with autism. He's very vulnerable to other people. And so I'm worried without stable housing and—and how long that family support is going to last with Grandpa and without income."

- In spite of all this he had gotten into Texas A&M, but he had not gone because he "hasn't been able to secure housing because of his pending felony."

- He "has been struggling with anxiety and depression."

- "He's an almost 23-year-old young man who's been dealing with this for six years. It's held him back . . . from moving on at all in life, having friends, girlfriend, job, college, while this is all pending."

Aside from cross-examining Dr. Mauro to get her to acknowledge that Del Hoyo himself was responsible for the initial charges, the State did not rebut this showing of prejudice from the delay. At a later pretrial hearing, on July 2, 2024, the trial court asked "if anybody has reconsidered their position on this case, given the light of the testimony I heard last time from the doctor?" At the November hearing on the motion to dismiss, the trial court stated "again, I am gonna go ahead and take note of Dr. Morrow's testimony with regards to effect on this young man" and then heard arguments. In the middle of the arguments, the trial court stated "we have harm." The State argues here that Del Hoyo's "anxiety and concern, if any, was caused not by the delay,

13

but by unrelated difficulties with [his] alleged autism and issues occurring in his family's home." But the trial court heard that the autism exacerbated the effects of the delay, and at least some of the issues occurring in his family's home were directly tied to his inability to support himself because of the pending charges. We agree with the trial court's explicit finding of harm. *Cf. Kelly v. State*, 163 S.W.3d 722, 728 (Tex. Crim. App. 2005) (uncontroverted testimony about prejudice can be disregarded by trial judge if record provides reasonable articulable bases for disbelieving it); *Cantu*, 253 S.W.3d at 286 (no prejudice where "there was no evidence that appellant lost his job or had his work schedule disrupted—he was a retiree who continued to work as a hunting guide in Mexico and did maintenance work for friends").

### Balancing the factors.

Having addressed the four *Barker* factors, we must now balance them. *Balderas*, 517 S.W.3d at 773.

Weighing in favor of finding a violation of Del Hoyo's speedy trial right are the facts that the delay was excessive, much of the delay was attributable to problems with the State's indictments, he asserted his right, and some prejudice resulted from the delay. Weighing against finding a violation are the facts that Del Hoyo was responsible for at least part of the delay both before and after jury trials were suspended as a result of COVID, and he ultimately asked for a dismissal. We hold that the four factors, balanced together, weigh in favor of finding a violation of Del Hoyo's right to a speedy trial. We therefore overrule the State's issue.

### CONCLUSION

Having overruled the State's issue, we affirm the trial court's orders of dismissal.

14

_____
Chari L. Kelly, Justice

Before Justices Triana, Kelly and Theofanis

Affirmed

Filed:   December 10, 2025

Do Not Publish